(No. 20892.—

CARSON PIRIE SCOTT & Co., Appellee, *vs.* W. J. PARRETT
*et al.* Exrs., Appellants.

*Opinion filed October 23, 1931—Rehearing denied Dec. 8, 1931.*

ACTON, ACTON & BALDWIN, and GUNN, PENWELL & LINDLEY, (WILLIAM M. ACTON, WALTER T. GUNN, and JAMES C. WOODBURY, of counsel,) for appellants.

WHITMAN, MILLER & COON, and GREEN & PALMER, (HENRY G. MILLER, CLAUDE H. COON, WILLIAM G. PALMER, and ORIS BARTH, of counsel,) for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause is here on appeal from the Appellate Court for the Third District on certificate of importance. The suit was filed in Vermilion county against John H. Harrison and M. J. Wolford on a certain contract entered into between them and Caldwell & Co., a Tennessee corporation. Appellee, Carson Pirie Scott & Co., a corporation, filed suit as a third party benefited by the contract. A demurrer was filed to the declaration attacking the right of appellee to sue on the contract, and the demurrer was by the trial court sustained and judgment for defendants entered. On appeal the Appellate Court reversed the judgment of the trial court and instead of remanding the cause, it, pursuant to a stipulation of the parties, entered judgment for the amount of the claim, plus interest at five per cent, and granted an appeal to this court. The amount of the judgment is $3956.64. The sole question involved on this appeal is the right of appellee to sue on the contract involved. During the pendency of the suit Wolford died and the cause proceeded against Harrison. Harrison having later died, his death was suggested, and appellants, as his executors, were substituted as parties defendant.

The facts as set out in the declaration are these: On November 24, 1926, appellants' testator, Harrison, was president and Wolford was treasurer of the Danville Hotel Company, an Illinois corporation organized for the purpose of constructing, and then engaged in the construction and furnishing of, a hotel in the city of Danville known as the Hotel Wolford. The hotel company had issued its bonds in the sum of $700,000 under date of February 13, 1926, and had entered into an agreement with Caldwell & Co. by which the latter was to underwrite and dispose of the bonds, the funds to be used in the construction and furnishing of the hotel. To secure these bonds the hotel company executed and delivered a real estate mortgage on the property and also its chattel mortgage on all furnishings and chattels installed in the hotel. This mortgage and the trust deed ran to the Liberty Central Trust Company and one Miller as trustees. In the trust deed the hotel company agreed that it would promptly furnish all moneys necessary to furnish the hotel and would have the same promptly completed and furnished. On November 24, 1926, the hotel company not having sufficient funds to furnish the hotel in accordance with the requirements of the trust deed and Caldwell & Co. having in its custody certain of the proceeds of the sale of the bonds and refusing to make further disbursement of such proceeds until the hotel company had in its possession sufficient funds to furnish the hotel, or until assurances should be given that the furnishings would be installed free of lien or incumbrance, Harrison and Wolford on that day entered-into a contract with Caldwell & Co., as follows:

"Memoranda of agreement made this 24th day of November, 1926, by and between John H. Harrison and M. J. Wolford of Danville, Illinois, parties of the first part, and Caldwell & Co., a Tennessee corporation, with its principal office at Nashville, Tennessee, party of the second part, witnesseth:

"Whereas, John H. Harrison is president of the Danville Hotel Company and M. J. Wolford is treasurer and interested in said

Danville Hotel Company, which is now erecting and preparing to furnish the Hotel Wolford at Danville, Illinois; and

"Whereas, the said Danville Hotel Company entered into an agreement with the party of the second part to underwrite and dispose of its 1033 bonds, aggregating $700,000 in total principal amount, dated March 1, 1926, same being secured by a mortgage or deed of trust upon the hotel realty in Danville, Illinois, and by a chattel mortgage upon the furniture, furnishings, crockery, glass and silverware, carpets, utensils, screens, window shades, beds, vacuum cleaners and all other chattels of every description to be located in said hotel and used in connection therewith, except chattels held for sale or consumable in their use, and to said deed of trust, of record in book 287, pages 127 *et seq.*, in the office of the recorder of deeds in the county of Vermilion, State of Illinois, and to said chattel mortgage, of record in volume 156 of chattel mortgages, page 428, in the office of the recorder of deeds in the county of Vermilion, State of Illinois, specific reference is hereby made and same are made a part hereof as fully as though set forth verbatim herein; and

"Whereas, the aforesaid mortgage or deed of trust on realty provides among other things: 'Said owner further covenants and agrees that it will promptly furnish all moneys necessary in addition to, and prior to, the use of the proceeds of this bond issue, to complete and furnish the Wolford Hotel, now being erected on said property in accordance with the plans and specifications heretofore made by Hall, Lawrence, Rippel & Ratcliffe, architects, and that it will have same promptly completed and furnished without interruption or delay in the work, and immediately upon completion that it will commence, or have commenced, the operation of said hotel;' and

"Whereas, the said Danville Hotel Company has on hand moneys estimated as sufficient, in addition to the proceeds of the bonds, to complete the hotel building but has not now on hand moneys sufficient to furnish the hotel; and

"Whereas, the said underwriter, under the terms of the underwriting agreement of date February 13, 1926, which is hereby referred to and made a part hereof as fully as though set forth verbatim herein, is the custodian of the proceeds of said bond issue and is advised that it should not further make disbursement of said proceeds on the erection of said hotel unless and until the Danville Hotel Company has in hand sufficient moneys to furnish the hotel building or assurance is given that the furnishings will be absolutely installed free of lien; and

"Whereas, the parties of the first part acquiesce in the correctness of that advice and are willing to guarantee the installation of said furnishings:

"Now, therefore, in consideration of the premises and the mutual promises and covenants of the parties hereinafter set forth, it is agreed:

"1. That the parties of the first part do hereby guarantee the installation in the Wolford Hotel at Danville, Illinois, on or before December 15, 1926, by Arthur A. Marer & Co., of Chicago, Illinois, of the furniture, of the price or value of $115,000, mentioned in contract of date October 9, 1926, and exhibit thereto, between the said Arthur A. Marer & Co., which written contract and exhibit are hereby referred to and made a part hereof, agreeing, if the hotel company does not promptly pay, to pay for said hotel company all of the payments therein required to be made before installation is completed, when said payments are due.

"2. That the parties of the first part will also have installed on or before December 15, 1926, in the Wolford Hotel, free of lien and subject to the lien of the chattel mortgage of the Liberty Central Trust Company and Miller, trustees under the mortgage securing the aforesaid bond issue, the following character of furniture or equipment by the following parties, or by other parties satisfactory to the party of the second part and in approximately the following amounts:

| | |
|---|---:|
| China—Arthur Schiller & Sons, 50% cash, balance six months | $3,007.90 |
| Silver—Rogers Bros., International Silver Company | 2,488.79 |
| Kitchen equipment—Wm. F. Traub Range Company | 15,680.69 |
| Waste baskets—Marshall Field Company | 180.00 |
| Linens—Carson Pirie Scott Company, Marshall Field Company | 6,763.25 |
| Refrigerators—Dry-Kold Refrigerator Company | 5,800.00 |
| Portrait—Arvid Nyholm | 1,500.00 |
| Drapes—Albert Pick | 10,000.00 |
| Shades—National Window Shade Company | 500.00 |
| Kitchen utensils—Wm. F. Traub Range Company | 2,000.00 |
| Additional kitchen utensils and supplies | 1,000.00 |
| Office equipment, front office equipment and miscellaneous supplies | 6,080.00 |
| Total | $55,000.00 |

"The parties of the first part will promptly pay for the above characters of furnishings and equipment when payments are due, if the hotel company does not do so, so that the installation of same promptly and free of lien is assured.

"3. The party of the second part in nowise waives the right to see that the said furnishings are suitable and sufficient, and, if they, or any of them, are not suitable or sufficient in the opinion of the party of the second part, the parties of the first part guarantee that additional furnishings will be installed promptly to make the

total furnishings sufficient and that unsuitable furnishings will be promptly replaced.

"4. The party of the second part will, so long as the aforesaid promises and covenants of the parties of the first part are each and all observed, as well as conditions for the payment of bond proceeds on construction (other than the having in hand of sufficient moneys for furnishings) are met, will disburse proceeds of the bond issue on the construction of the hotel building."

Appellee furnished goods to the hotel company to the extent of $3266.20 and Marshall Field & Co. sold to the hotel company linens to the amount of $1321. These articles were delivered to and installed in the hotel building and accepted by the hotel company on December 15, 1926. The terms of the sale by appellee were thirty days net. No attempt to reserve a lien on the goods was made by appellee. Under the terms of the sale payment for the goods became due on January 15, 1927. The hotel company did not pay for the goods and suit was brought on the above contract.

There is but one question in the case, and that is whether appellee has a right to sue on the contract between Harrison and Wolford and Caldwell & Co. The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. This rule has been announced without variation in numerous cases decided by this court. *Kinnan* v. *Hurst Co.* 317 Ill. 251; *Vial* v. *Norwich Union Fire Ins. Society,* 257 id. 355; *Searles* v. *City of Flora,* 225 id. 167; *Harts* v. *Emery,* 184 id. 560; *Webster* v. *Fleming,* 178 id. 140; *Lawrence* v. *Oglesby,* id. 122; *Crandall* v. *Payne,* 154 id. 627; *Bay* v. *Williams,* 112 id. 91; *Dean* v. *Walker,* 107 id. 540; *Snell* v. *Ives,* 85 id. 279;

*Bristow* v. *Lane,* 21 id. 194; *Brown* v. *Strait,* 19 id. 88; *Eddy* v. *Roberts,* 17 id. 505.

It is not seriously argued that such is not the rule in Illinois, but the argument turns rather on the application of the rule to the construction of the contract. In such a case no opinion in an adjudicated case, even of this court, is controlling unless the language of the contract or the circumstances surrounding the parties are substantially the same, since each case must depend upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. (*Calame* v. *Paisley,* 296 Ill. 618; *Street* v. *Chicago Wharfing Co.* 157 id. 605; *Bull* v. *City of Quincy,* 155 id. 566; *Chicago, Madison and Northern Railroad Co.* v. *National Elevator Co.* 153 id. 70.) The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability. *Hageman* v. *Holmes,* 179 Ill. 275.

The contentions of the parties concerning the construction of this contract may be generally stated as follows: Appellants contend that the contract was made for the sole purpose of benefiting Caldwell & Co. and protecting it against loss, it having underwritten the bonds issued by the hotel company; that the interest of appellee was but incidental, and under the rule here stated appellee has no right to sue on the contract. Appellee, on the other hand, insists that the promise of Harrison and Wolford to pay for the linens if the hotel company did not was a contract directly benefiting appellee, and as such direct beneficiary appellee has a right to sue on the contract even though the contract contained stipulations and agreements relating to

other purposes. Appellee rests its case upon the second paragraph of the contract, while appellants contend that the second paragraph is modified by other language of the contract.

It is a cardinal rule of construction of written contracts that the court will look at the entire contract and construe it according to the intention of the parties as the same appears from the language of the instrument. It appears from the contract that the hotel company did not have on hand money sufficient to furnish the hotel and that Caldwell & Co. would make no further advancements until the hotel company had sufficient funds or gave assurances that the furnishings would be installed without lien. The preliminary statements concerning the contract as set out in the instrument itself disclose the reason for the refusal of Caldwell & Co. to advance further funds, and also assert agreement with Caldwell & Co. in that matter and a willingness on the part of Harrison and Wolford to bring about the installation of the furnishings.

It will be observed that by paragraph 2 of the contract, Harrison and Wolford, as parties of the first part, agree to "have installed on or before December 15, 1926," and subject to the lien of the chattel mortgage of the trustees, "the following character of furniture or equipment by the following parties, or by other parties satisfactory to the party of the second part and in approximately the following amounts." Thereafter in that paragraph appear certain items of furnishings and names of persons to furnish the same, including appellee. This paragraph then concludes: "The parties of the first part will promptly pay for the above characters of furnishings and equipment when payments are due, if the hotel company does not do so, so that the installation of same promptly and free of lien is assured." Appellants argue that the closing language of the paragraph indicates the purpose of the contract to install the furnishings free of lien or insure such installation, and that when that was done and the property so installed

became subject to the lien of the chattel mortgage given to the trustees, the contract of Harrison and Wolford was at an end and that there was no intention to directly benefit appellee in the contract. It is also argued that Caldwell & Co. was not concerned with the manner in which the goods were installed so long as they were lien free, and therefore could have no reason for requiring payment for them to appellee.

It is also argued that appellee has no right to sue on this contract for the further reason that the language in the closing sentence of paragraph 2 by which Harrison and Wolford agreed to pay "for the above characters of furnishings and equipment," referred to any furnishings bought from any source of the same character, and therefore did not refer to furnishings bought only from appellee, and that the promise of payment was made only in case it should become necessary in order to secure the installation of the furnishings lien free or to clear them of any prior lien existing thereon. Considered with the entire contract, the language of paragraph 2 must be held to mean, as that language clearly states, that Harrison and Wolford undertook to install the hotel furnishings on or before December 15, 1926; that such goods were to be "the following character of furniture or equipment by the following parties, or by other parties satisfactory to the party of the second part and in approximately the following amounts." Therefore the words "above characters of furnishings," as used in the last sentence of paragraph 2, must plainly refer to the character of furnishings first designated as "the following character of furniture or equipment" and more fully set out in the schedule of articles and persons to furnish them. It would do violence to the language of the contract to say that the words "above characters of furnishings" relate only to furnishings of like character without regard to the foregoing schedule, and that the promise to pay for

"above characters of furnishings" refers equally to furnishings of like character procured by any means, from any source. The contract not only delineates the character of furnishings but specifies who shall furnish them and the approximate amount to be furnished. Harrison and Wolford had no right to change that contract either as to persons to furnish the goods or the character of the goods without the consent of Caldwell & Co., and there is no pretense that such consent was sought or change was attempted. It seems clear, therefore, that the undertakings of Harrison and Wolford were not only to install furnishings of a certain character and certain amounts but to purchase them from the parties therein named and pay for them if the hotel company did not. The contract gave them no right to install furnishings purchased from any other source. This was an agreement to purchase certain goods from appellee and to pay for them if the hotel company did not. It is difficult to conceive of a contract more directly to the benefit of appellee third party.

It is argued, however, that by the contract Harrison and Wolford expressly reserved the right to fulfill their agreements with Caldwell & Co. by less than payment for the goods, and that this reservation consisted in the ability of the hotel company to acquire the goods upon credit or otherwise so as to install them free of lien, and that the goods having been acquired on the credit of the company free from lien, Harrison and Wolford's contract with Caldwell & Co. is fulfilled. The contract requires that Harrison and Wolford "promptly pay for" the goods "when payments are due, if the hotel company does not." It seems to us that the undoubted intention here expressed was to cover a situation in which the furnishings would be purchased on some form of credit. The contract recites that the hotel company did not have funds to make cash purchases, and therefore the parties must have contemplated guaranty of payment on the part of Harrison and Wolford

should the goods be furnished either on conditional sale or open account. The language does not warrant a construction leaving out of the agreement payment for such purchases as were made on credit of the hotel company. Payment "when payments are due" naturally contemplates deferred payments. It would have been an easy matter to have so worded the contract as to limit Harrison and Wolford's liability to a discharge of vendor's or other liens only and to have excluded payment for such goods as were bought on open account had it been the intention of the parties so to do.

Counsel argue earnestly, however, that the controlling language of this paragraph, so far as determining the intention of the parties is concerned, is to be found in the last words, "so that the installation of same promptly and free of lien is assured," and that this was the only purpose of the contract and the only interest of Caldwell & Co. While it may be conceded that it was of primary concern to Caldwell & Co. that the furnishings, when installed, be subject to the chattel mortgage as a first lien, yet it is quite reasonable that it should require as the method of installing the goods lien free that they be paid for and that Harrison and Wolford pay for them if the hotel company did not. It is also reasonable to suppose that it desired that there be no junior judgment liens against the hotel company for these furnishings to affect the earnings of the hotel, from which all expected the bonds and interest to be paid. Whatever may have been the reasoning of the promisee, it is evident that it did choose to require, as a method of installing the goods lien free, that the same should be paid for promptly, either by the hotel company or Harrison and Wolford. This is evident from the language of the whole contract. This contract is not merely one for prompt installation of the furnishings in any manner that would insure their installation lien free, but is

for the prompt payment of the goods "so that the installation of same promptly and free of lien is assured." In other words, the contract specifies the means by which the installation of the goods lien free is to be assured. This the promisee had a right to exact. The consideration for that promise was the advancement of funds required to complete the building.

Counsel argue that the case of *Searles* v. *City of Flora, supra,* is entirely analogous on the facts with the case at bar and should control the decision of this case. In that case Searles contracted with the city of Flora to furnish, pay for and install a certain engine and generators in the electric light plant in that city for the sum of $4000. He gave bond for the faithful performance of that contract. The condition of the bond was, that if Searles should perform the conditions of his contract and save the city harmless and pay any loss and damage to the city occasioned by the failure or default of Searles on his contract the same was to be void, otherwise in full force. Searles purchased an engine and two generators and installed them as required by his contract but he did not entirely pay for them. The city paid him in full, and afterwards suit was commenced on this bond in the name of the city, for the use of the vendor of the engine, against Searles and the bonding company. In that case this court, after laying down the principles hereinbefore announced, found that the evidence showed that the bond was not entered into for the purpose of securing laborers or materialmen but to save the city harmless. It is there noted that nothing whatever was said in the contract or bond about paying third parties for materials and that the city did not even authorize Searles to buy anything on credit. The case was therefore distinguished from those cases in which the contract is for the benefit of a third party, and the right of the materialman to sue on the contract was denied. That case rested upon the construction of the bond, which was alone to save the

city harmless, and any benefit that might come to a vendor of materials therefore was but incidental.

Counsel earnestly argue, however, that the only thing here which Harrison and Wolford agreed to do was to save Caldwell & Co. harmless. But, as we have said, it appears from the contract that Harrison and Wolford stipulated that the goods sold by appellee to the hotel company would be paid for by them if the hotel company did not pay. This was a valid agreement, based on valuable consideration. Harrison and Wolford's agreement was not merely to save Caldwell & Co. harmless on its undertaking to underwrite and sell the bonds, but was to purchase from appellee certain goods and pay for them if the hotel company did not, so that those goods might be installed lien free.

This contract comes within the definition of a donee beneficiary offered by the American Law Institute in its Re-statement of the Law of Contracts, section 133, where a third person is declared to become a donee beneficiary "if it appears from the terms of the promise, in view of the surrounding circumstances, that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due, nor supposed or asserted to be due, from the promisee to the beneficiary." By section 135 of this Re-statement the rule is offered as follows: "A gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise, and the duty can be enforced by the donee beneficiary for his own benefit. A gift promise also creates a duty of the promisor to the promisee to render the promised performance to the donee beneficiary." This rule is supported by the decisions of this court above cited.

Appellants argue that there was no reason why Caldwell & Co. should secure a direct promise to appellee. Appellee's right to sue does not depend on a motive on the

part of Caldwell & Co., the promisee, nor on an obligation running from the promisee to appellee, but arises though there is no asserted or supposed obligation from the promisee to such third party. The donee beneficiary has a right to enforce such a promise. Appellee in this case is a donee beneficiary under this contract. It is directly, and not incidentally, benefited thereby. By the contract it was given not only the right to be paid for the goods, but the right, in the first instance, to furnish them. The rule long established and frequently announced in this State was again announced in *Dean* v. *Walker, supra.* It was there stated that it is a familiar rule, and one well sustained by authority, that where one person for a valuable consideration makes a promise to another for the benefit of a third person such third person may maintain an action upon it; that it is not necessary in such a case that a consideration flow from the third person for whose benefit the promise is made, or that there should be any privity between him and the parties to the contract.

Counsel for appellants call attention to the fact that the *Dean case,* and others similar, arose on a mortgage debt where the grantee of the mortgaged property assumed to pay the mortgage; and this is true, but the action in the *Dean case* was in assumpsit, brought by Dean for the use of certain of his predecessors in title, against Walker, on his agreement, made when he purchased the property, to assume the mortgage indebtedness against it. After discussing the various grounds argued, the opinion bases the recovery against Walker "on the broad and well settled principle that where one person makes a promise to another, based upon a valuable consideration, for the benefit of a third person, such third person may maintain an action upon it." It will thus be seen that no distinction is to be drawn between contracts to assume a mortgage for the benefit of the mortgagee and other contracts made for the direct benefit of any third party.

266

Numerous other cases are cited by appellee and appellants. What we have said, and the cases enumerated, clearly announce the rule in this State. In their last analysis the cases all rest on a construction of the contracts there involved. We are of the opinion that this contract was intended as a direct benefit to appellee to the extent of the furnishings supplied by it to the hotel and that it has a right to sue for the breach of that contract.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*