John W. Cherry, Appellee, v. The Aetna Casualty and Surety Company, Appellant.

Gen. No. 9,142.

Opinion filed April 24, 1939.

ACTON, ACTON & BALDWIN, of Danville, for appellant; EDMUND D. ADCOCK, of Chicago, and WILLIAM M. ACTON, of counsel.

HUTTON, CLARK & HUTTON and GUNN, PENWELL, LINDLEY & BURK, all of Danville, for appellee; HORACE E. GUNN and H. ERNEST HUTTON, of counsel.

MR. JUSTICE FULTON delivered the opinion of the court.

This was an action in debt on a penal bond commenced in the circuit court of Vermilion county on September 23, 1927. The appeal is from a judgment entered against the defendant, appellant here, for the sum of $121,980.78, on March 4, 1938. The subject matter out of which this controversy arises has been involved in serious litigation both in the federal and State courts for many years.

In 1925, the Danville Hotel Company undertook the construction of a nine-story hotel building in Danville, Illinois, and Charles Benson, Inc., entered into a contract with the company to build the same for $604,899, in cash and common stock of the par value of $217,800. In order to provide funds for the construction of the hotel the company applied to Caldwell & Company of Nashville, Tennessee, to underwrite an issue of first mortgage bonds to be secured by a trust deed on the building. The general contract with Benson, Inc., provided that the owner should have the right to require the contractor to furnish bond covering, the faithful performance of the contract and the underwriting agreement dated February 13, 1926, also disclosed on its face that the money from the bond issue was to be disbursed only upon proof that it had been expended in the construction of the building and that liens were waived and satisfied. It contained a further provision that the owner should have the right to require the contractor to furnish bond covering the faithful performance of the terms of his contract.

The mortgage or trust deed was given to the Liberty Central Trust Company and others, as trustees, dated

March 1, 1926, and secured bonds aggregating the sum of $700,000. It was recorded on April 5, 1926. It provided that the owner should furnish, in addition to the proceeds from the bond issue, all moneys necessary to furnish and equip the hotel. The underwriting agreement further provided that 10 per cent of the amount realized from the bond issue, for underwriting fee, $12,000, for premium on the surety bond and the architect's fee amounting to over $47,000, be retained out of the $700,000, so that the amount available for construction amounted to something over $570,000. After considerable negotiation between the contractor, Benson, Inc., Caldwell & Company and the appellant a surety bond in the penal sum of $822,699, was issued on May 3, 1926. The bond ran to the Danville Hotel Company as obligee. The obligors were Chas. Benson, Inc., principal and The Aetna Casualty & Surety Company, (appellant) surety. The condition was as follows:

"Now, therefore, the condition of this obligation is such that if the Principal shall faithfully perform the Contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do, and shall further reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after twelve months from the day on which the final payment under the Contract falls due."

As the building was nearing completion the hotel company defaulted in its payments to Benson, Inc.,

under the contract and later in July, 1927, was declared a bankrupt by the United States District Court. Thereafter, the trustee in bankruptcy filed a petition to marshal the liens and sell the property of said bankrupt free from all liens and incumbrances. In that petition all of the subcontractors, trustees for the bondholders, Benson, Inc., and the appellant surety company were made parties defendant. After a full hearing the court ordered that the property of the Danville Hotel Company be sold free of liens and that the liens of subcontractors were to be superior to that of the mortgage securing the bonds.

Under the provisions of the trust deed securing the bonds, the bondholders were given the right to bid in at any sale and deliver bonds in payment of the sale price to the extent of the principal and unpaid interest in lieu of cash.

The record disclosed that there were subcontractors who had not been paid who would ultimately be entitled to mechanics liens prior to the lien of the trust deed, and the court therefore ordered in the decree of sale that if the bondholders should bid for the property at the sale, they should deposit sufficient cash prior to the sale, to cover the amount of any prior liens that might later be established. In compliance with this order the bondholders deposited with the trustee in bankruptcy, as a condition precedent to bidding at the sale, the sum of $200,000. The bondholders bid at the sale and purchased the real estate for $586,668.18, which was less than the amount of bonds held by them.

In a later hearing it was ascertained that the amount of the mechanics lien claims entitled to have priority and to be paid from the sum deposited by the bondholders in order to discharge the liens and accrued interest thereon was the sum of $92,492.08.

The appellant here required the contractor to obtain waivers of liens from subcontractors who had

furnished labor and materials prior to May 3, 1926, the date the bond was executed. These lien waivers were secured but misrepresented the true facts. The contract price of the subcontractor in each instance was raised to an amount larger than the actual contract, and a receipt and waiver given for an amount that would leave due upon the contract the actual amount thereof. The total these several contractors raised and the amounts of their contracts amounted to $115,350, and these waivers were delivered to Caldwell & Company as disbursers of the bondholders money, and caused them to believe that the said amount had been paid out for labor and materials under the building contract. As a matter of fact a very small part of said sum had actually been paid. Because of this fact, the United States District Court in passing upon the claims of Benson, Inc., and the appellant surety company in the bankruptcy court, held that claimants were clearly estopped to set up any claim for mechanic's lien as against the mortgagee.

In the original hearing of this cause in the circuit court the appellee relied upon three theories of recovery, to wit:

1. That the plaintiff had a right to recover as a third party beneficiary under the bond. Appellant demurred to this assignment and the demurrer was sustained by the trial court.

2. Plaintiffs maintained that the bondholders were entitled to recover as subrogees of the hotel company. Demurrer was also sustained as to this assignment and the appellees abandoned this theory of recovery.

3. The plaintiffs claimed the right to recover as subrogees of the subcontractors and materialmen who had direct contracts with Benson, Inc., the general contractor, on the ground that in order to protect their mortgage lien the bondholders were required to satisfy such subcontractors mechanics' liens against the mortgaged property.

Many pleas, demurrers, replications and other pleadings were filed with reference to the above assignments. A thorough discussion of the pleadings as they appeared on the former hearing is contained in the opinion of this court on prior consideration of this cause and reported in 285 Ill. App. 601.

. This court reversed the ruling of the trial court in sustaining the said demurrers and in the main upheld the theories advanced and relied upon by the appellees and denied the defenses claimed by appellant. The case was remanded to the circuit court of Vermilion county for further proceedings not inconsistent with that opinion.

Briefly, this court held on that appeal, First, that the plaintiffs were entitled to recover on the theory of subrogation; Second, That the contractual obligation of the bond in question was entered into for the direct benefit of the bondholders and that under the rule announced in the case of *Carson, Pirie, Scott & Co. v. Parrett,* 346 Ill. 252, the bondholders would have the right to sue the surety company in case of default on the bond as third parties beneficiary; Third, That the suit was instituted within the limitation of time placed in the bond and the additional assignment of breaches were proper so long as they were within the general statute of limitations; Fourth, That the satisfaction of the judgment in the case of the receiver for the use of subcontractors Yeager and the Carson-Payson Company, decided by this court, and reported in 264 Ill. App. 199 [*Cherry for use of Yeager v. Benson, Inc.*], did not bar the right of the appellees to proceed with this suit.

After the remanding order was filed in the circuit court, the pleadings were adjusted and orders entered to comply with the findings of this court. Thereafter the appellant filed additional pleas to which replications and other pleadings were considered by the trial

court. They were long and voluminous but appellant concedes the important questions and issues raised by the pleadings and the testimony are four in number.

1. Whether a consideration of the bond in controversy and the circumstances surrounding the parties at the time of its execution show that the appellee was intended to be benefited under the third party beneficiary count.

Appellant contends that on the previous appeal this court held the allegations of the count claiming the right to recover on the theory of third party beneficiaries to be sufficient in law, and that such decision would not be controlling now because of the new facts and circumstances contained in its additional pleas and the testimony introduced at the trial.

The facts and circumstances upon which appellant relies to show that the bond was not intended for the benefit of the bondholders are briefly: (a) That the Danville Hotel Company and Charles Benson, Inc., entered into a contract for the construction of a hotel building whereby the contractor was to be paid by the owner the sum of $604,899.80, in cash; (b) Caldwell & Company agreed to underwrite the bond issue for $630,000, deposit the proceeds as the building progressed with the right to withhold sufficient funds to entirely complete the building free and clear of liens and with the agreement that the hotel company should furnish any additional funds; (c) That the underwriter did not require of the owner a performance and completion bond; (d) That the underwriter before selling the bonds required evidence of the secondary financing and was falsely informed that $434,000 worth of stock had been sold.

In studying this record we cannot accede to the position urged by appellant that the benefit to the bondholders was incidental and not direct. The fact that the underwriters required certain things to be done

with reference to secondary financing or were falsely informed concerning the same, would only tend to emphasize the care and caution taken by them in protecting the lien of the bondholders. Whether the bond was termed a performance and completion bond or merely a contract bond would not in any manner change its terms. Contracts between the owner and the contractor and the manner in which the underwriters agreed to disburse the proceeds from the sale of bonds does not convince us that their interest in the bond was incidental.

The conduct and actions of the parties in the negotiations for a bond and the surrounding circumstances shed more light upon that question. The evidence clearly shows that Caldwell & Company were intensely interested in the bond. They were furnishing the money to build the hotel, selling the bonds to purchasers upon the representation that the trust deed securing the bonds would be a first lien upon the hotel property. They were the first ones to suggest a bond; they insisted that the form and the terms should be approved by them; that the bond should be given before any money was paid out from the proceeds of the bond issue. A long series of letters and communications between Caldwell & Company and the agents of the appellant concerning the form and contents of the bond preceded its execution. These and many other facts disclosed by this record lead us to believe that Caldwell & Company representing the bondholders were intended to directly benefit by the terms of the bond and although not mentioned in the bond were entitled to institute suit for a breach thereof. The case of *Carson, Pirie, Scott & Co. v. Parrett*, 346 Ill. 252, we believe is authority for this holding and is applicable to the facts in this case. In that case the court said: "The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue

on the contract; if incidental he has no right of recovery thereon."

In the present case the condition of the bond required the principal and the surety to pay all persons who had contracts directly with the principal for labor or materials, which made all the subcontractors, who furnished labor or materials, directly interested in the bond. We held in the former opinion that because the appellee was compelled to pay the subcontractors in cash before they were permitted to bid at the sale made under the order of the United States District Court, that they became subrogated to the rights of such subcontractors and were entitled to all the remedies which the subcontractors possessed as against appellant.

2. The second problem confronting the court is whether the appellees' right of recovery is barred by laches and estoppel. This suit was started in September, 1927, and before the petition to marshal liens was filed in the federal court. The bankruptcy proceedings over the estate of the bankrupt hotel company were not concluded until February, 1930.

It is reasonable that no action would be taken in this suit during that period of time. The appellant denied any liability as to the claims of Yeager and the Carson-Payson Company and judgment was taken on their claims in December, 1930. An appeal was taken by appellant to this court. As the appeal raised the fundamental defense of no liability on the bond, even to subcontractors, it was natural for the bondholders to await the outcome of that suit. The appeal was decided in this court in January, 1932. (264 Ill. App. 199.) Within the same year new assignments of breach were filed and a long series of involved pleadings followed. From the rulings of the trial court on the pleadings another appeal was prosecuted. In April, 1936, the opinion of this court heretofore referred to was released. When remanded to the circuit court of Vermilion county additional and voluminous

pleadings were again filed. A trial on the merits then followed and after judgment this appeal. From the inception of the litigation the appellant has stubbornly resisted every effort to hold it liable under the bond. Under such circumstances we can find no unnecessary delay on the part of the appellee.

As to the estoppel, we can find no evidence of fraud or misconduct on the part of appellee or no requirement of the law that they should have submitted the claims of this suit to the federal court in the bankruptcy proceedings. We believe the trial court properly denied the defense of laches and estoppel.

3. The third question raised by appellant and argued earnestly and exhaustively is that appellees' right to recovery is barred by the doctrine of *res adjudicata*. Appellant insists that the bankruptcy proceedings determined that it was discharged from any and all liability under its bond; that the effect of those proceedings was to exonerate the appellant from any obligation under its bond and that the issue presented by the appellee in this case could have and should have been determined in the proceedings in the federal court. An examination of the pleadings and orders of the United States District Court does not disclose that any issue was raised as to the liability of the appellant under its bond. Nor do they disclose any issue or finding which can be construed to exonerate appellant from its obligations under such bond.

It might be a source of argument as to whether or not all controversies between the bondholders and the appellant could have been determined in the bankruptcy court. Appellant relies on the principles announced in the cases of *Godschalck v. Weber,* 247 Ill. 269 and *Harmon v. Auditor of Public Accounts,* 123 Ill. 122, where it is stated:

"Nor is such former judgment or decree conclusive only as to questions actually and formally litigated. It is conclusive as to all questions within the issue whether formally litigated or not.

"It is elementary that the doctrine of *res adjudicata* extends not only to the questions that were actually decided in the former case, but to the whole controversy, and is conclusive as to all questions within the issue whether formerly litigated or not."

The present case was a suit on the bond while the primary purpose of the bankruptcy proceedings was the administering of the estate of the Danville Hotel Company which entailed the allowance of claims, the fixing of priorities, the sale of the assets and distribution to creditors.

The obligations of appellant under its bond were not directly in issue. Certainly the precise question was not raised nor determined by the federal court. Its jurisdiction to pass upon the exact problems in this case might be seriously questioned. Before a fact or question in some former suit can be claimed to be *res adjudicata* in a subsequent suit, as estoppel by verdict, certain requirements must be shown to exist. When the second suit is on a different cause of action, claim or demand, the judgment in the first suit is an estoppel only as to the point or question there actually litigated and determined, and not as to other matters which might have been litigated and determined. The burden of proof is on him who invokes the estoppel. *Harding Co. v. Harding*, 352 Ill. 417.

We are in accord with the holding of the trial court that *res adjudicata* is not a proper defense in this case.

We also approve of the finding of the trial court on the question and the amount of interest allowed.

The questions involving the sufficiency of the pleas as to 12 months' limitation for starting suit and appellees' right to subrogation have been heretofore passed upon by this court adversely to the contention of appellant.

Finding no substantial error in the record the judgment of the circuit court of Vermilion county is hereby affirmed.

*Affirmed.*