GORDON S. MARK, Plaintiff-Appellant, *v.* NEW YORK STOCK EXCHANGE, Defendant-Appellee.

First District (3rd Division)  No. 76-1490

Opinion filed March 29, 1978.

Ware Adams, of Chicago, for appellant.

Sidley & Austin, of Chicago (William H. Tobin, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

This action was brought to recover the unpaid amount of a judgment on the theory that plaintiff, Gordon S. Mark, is a third-party beneficiary of a contract between plaintiff's judgment debtor, McDonnell & Co., Inc. (McDonnell), and defendant, the New York Stock Exchange (Exchange).

Plaintiff obtained a judgment in the United States District Court for the Northern District of Illinois against McDonnell, a stock brokerage firm. Prior to the entry of this judgment, McDonnell, which had ceased business operations, and the Exchange had entered into a "Liquidation Agreement" (the Agreement). Pursuant to the Agreement, the Exchange had appointed a liquidator of McDonnell's business, and the liquidator was given a power of attorney to dispose of McDonnell's assets and to pay the claims of customers and other creditors of McDonnell. The liquidator filed a portion of McDonnell's assets as a supersedeas bond while the judgment was being appealed to the United States Court of Appeals. That court subsequently affirmed the judgment but the bond proved insufficient to pay the entire judgment; thus, McDonnell still owes plaintiff the sum of $9,016.67 on the judgment, plus accrued interest.

Plaintiff then attempted to collect the deficiency from the Exchange in the United States District Court action in which the judgment was entered. He moved for leave to file a complaint against the Exchange, asserting the same cause of action as in the present case. When this motion was denied, plaintiff filed this action against the Exchange in the circuit court of Cook County to recover the deficiency. Plaintiff contended in the circuit court, as he does here, that the Agreement entitles him to recover the balance of his judgment from the Exchange as a creditor, third-party beneficiary to the Agreement. The Exchange argued it had no duty to pay the debts of McDonnell. On cross-motions by both parties for entry of a summary judgment, the circuit court granted the Exchange's motion,

denied plaintiff's motion and entered judgment accordingly. Plaintiff appeals from this order.

Plaintiff's right to sue the Exchange as a third-party beneficiary depends upon the liability of the Exchange to McDonnell as established by the Agreement. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) The Agreement is controlling with respect to the rights of plaintiff, and the liability of the Exchange cannot be extended beyond the terms of the Agreement. (*Carson Pirie Scott.*) Therefore, we must first determine the liability of the Exchange to McDonnell under the Agreement.

The Agreement authorized the trustees of the Special Trust Fund (the Fund) of the Exchange to advance monies of the Fund to McDonnell so McDonnell could meet its obligations. The Fund is provided for by the constitution of the Exchange; it was established by a deed of trust as a common law trust under the laws of the State of New York and accorded perpetual life by act of the New York State Legislature. (1965 N.Y. Laws, ch. 401.) The trust deed provided that the trust assets were to be used for assistance to customers of members of the Exchange "threatened * * * with loss * * * because such * * * member firm * * * in the opinion of the Trustees * * * is insolvent or is in such financial condition * * * it may not be able without assistance to meet * * * its obligations to such customers * * *."

The power to decide whether monies from the Fund should be advanced to McDonnell was given to the trustees of the Fund. A preamble paragraph of the Agreement stated that "a portion of the * * * Fund * * * may under certain circumstances and *at the absolute discretion of the Trustees* * * * be used for the purpose of providing direct or indirect assistance to customers of McDonnell * * *." (Emphasis added.) The Agreement also provided:

> "II. Each of the signatories hereby agrees that, *in the event* the Trustees loan any cash, securities or other property to McDonnell or expressly guarantee any obligation of McDonnell to any one or more of its creditors, or pay all or any portion of any obligation of McDonnell to any one or more of its creditors (*any such loan, guarantee, or payment to be made only in the absolute discretion of the Trustees*), any and all such loans shall be repaid the Trustees by McDonnell in full * * *." (Emphasis added.)

This is consistent with the Exchange's constitution, which declares that the decision to advance Fund monies shall be "exclusively within the sole and absolute discretion of the Trustees * * *."

The Agreement also contained the following provision, which gave the Exchange the right to appoint a liquidator:

> "From and after the date on which the first Loan, or the first

guarantee by the Trustees of any obligation of McDonnell, or the first payment by the Trustees of all or any portion of any obligation of McDonnell to any of its creditors, is made, the Exchange shall have the right to appoint such person as it may choose as Liquidator of the business of McDonnell."

In addition, the Agreement also defined the powers of the liquidator, stating that he was to take control of McDonnell's business and property for the purpose of conducting an orderly liquidation of the assets and business. The Agreement further directed the liquidator to proceed as follows:

"i.) he shall promptly take such steps as he may deem practicable to reduce McDonnell's operating expenses and to dispose of McDonnell's salable assets;

ii.) he shall have power to retain independent public accountants, consultants, counsel and other agents and assistants and shall have power to augment and reduce or eliminate the staff of McDonnell;

iii.) he shall, as soon as practicable, assert and collect or settle all claims and rights of McDonnell;

iv.) he shall pay any claim against McDonnell considered by him to be a valid claim of any McDonnell customer or other creditor;

v.) he shall take such other steps as he deems necessary or appropriate to liquidate the business and assets of Mcdonnell."

Therefore, the Exchange was under no duty to advance any monies to McDonnell. First, the Agreement clearly indicates that the only source of funds to be used in assisting McDonnell was to be the Fund. There is no indication in the Agreement that the Exchange would provide monies other than those in the Fund for McDonnell's use. Second, the Agreement was carefully drafted so that the trustees had absolute control over the decision whether to advance monies to McDonnell. Even though the trustees had the power to loan McDonnell money or to assume McDonnell's obligations, the trustees had no duty to take any such action. McDonnell had no right under the Agreement to compel the trustees or the Exchange to take any action. See *Antonucci v. Robinson & Co.* (S.D.N.Y. 1970), 317 F.Supp. 668, 670.

Plaintiff contended during oral argument that once the Exchange appointed a liquidator, the Exchange became obligated to pay the balance of plaintiff's judgment. He reasoned that the consideration for McDonnell's acceptance of the Exchange-sponsored liquidation was the Exchange's promise to pay McDonnell's debts.

Plaintiff misconstrues the purpose and intent of the Agreement, which provides that the Exchange had no right to appoint a liquidator until the trustees lent money to, or assumed the obligations of, McDonnell. Unless

the trustees took such action in McDonnell's favor, the Exchange had no right to oversee the liquidation of McDonnell by appointing a liquidator. The Agreement does not provide that by exercising its right to appoint a liquidator, the Exchange became obliged to pay McDonnell's debts. And even though the liquidator had broad powers, he had no power to commit the monies of the Fund or the Exchange. At all times, the decision whether to make any loans to McDonnell was within the absolute discretion of the trustees, and the Fund remained the sole source of any money to be advanced.

Thus, McDonnell had no right to enforce any payment by the Exchange or even by the trustees. Plaintiff claims that his right to recovery against the Exchange derives from McDonnell's rights under the Agreement. Because plaintiff under his own theory can have no greater rights than McDonnell, he has no right to recover the deficiency in his judgment from the Exchange. The judgment for the Exchange is therefore affirmed.

Defendant also has contended that this action is barred by the doctrine of *res judicata* because of receivership proceedings against McDonnell in Delaware, and that the Agreement affirmatively negates any third-party rights. Because of our holding that plaintiff has no rights under the Agreement against the Exchange, consideration of these additional defenses is not required here.

Judgment affirmed.

JIGANTI, P. J., and McGILLICUDDY, J., concur.