## LOBRANO v. NELLIGAN.

Although by the general law of Louisiana a father's guardianship of his minor children imports a mortgage on his immovable property in their favor, yet this mortgage does not make such a contract between the guardian to the minor as that the legislature may not, by special statute, authorize the father to sell his property divested of the tacit mortgage, especially where the proceeds are still preserved to the minors by an investment which the statute prescribes.

IN error to the Supreme Court of Louisiana; the case being thus:

By the civil code of Louisiana the father is the administrator of the estate of his minor children, and does not, as in communities where the common law prevails, give personal security for the fidelity of his administration, but his immovable property is tacitly mortgaged in favor of the minor from the day of his appointment, as security for his administration, and for the responsibility resulting from it.

In this condition of the general law on the subject, the legislature empowered James Robb, of New Orleans, to sell his real estate under certain conditions, and directed so much of the proceeds of the sale as should be coming to his children to be invested for their benefit, subject to the approval of the Probate Court, in certain species of securities, which could not be assigned or transferred until the termination of the administration. Power was given to the court to discharge the mortgage to the children, on compliance with the conditions imposed in the act. And the court having so discharged the mortgage to the children, Robb sold the property to one Nelligan. Nelligan in turn sold it to one Lobrano. Lobrano, however, refused to complete the purchase, assigning as a cause that the property was subject to a legal mortgage in favor of the minor children, and that the act of the legislature by virtue of which it was pretended that the mortgage was raised and cancelled, impaired the obligation of a contract, and was, therefore, unconstitutional and void. Suit being brought by Nelligan against Lobrano

for the purchase-money, and the plea of unconstitutionality being set up, the Supreme Court of Louisiana held that the statute impaired no contract and was valid. Lobrano then brought the case here.

*Mr. Durant, for the plaintiff in error:*

By the law of Louisiana guardianship imports a mortgage on the property of the guardian in favor of the minor. The guardian and the minor stand then in relation to one another as parties to a contract. And the contract is not the less a contract because the obligation is incurred by the obligor (the guardian) without any express agreement on the part of the obligee (the minor). The act of the legislature of Louisiana impaired this obligation by relieving the property of Robb from the mortgage, and leaving the minors without security.

*Mr. J. P. Horner, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

It is contended that the statute authorizing Robb to sell is invalid, because it impaired the obligation of a contract; but we think this a mistaken view of the subject. It is certain there was no contract to violate, which the parties themselves had any hand in making, and the inquiry arises whether the law has made one for them which has been impaired by this statute. It will not be questioned that the legislature possesses the power to determine by law the manner in which the estates of infants shall be preserved, and to say what kind of security shall be given by those who are intrusted with their management, and, if so, as a necessary consequence, it has the power of altering the law on the subject, whenever in its judgment the interest of the minors or the public good requires that it should be done.

In most of the States of the Union the guardian of the property of a minor gives bond, with personal securities, for his faithful conduct; but in Louisiana, in case the father occupies that relation, a different security has been provided,

for his entire real estate is bound for the proper discharge of his trust. The security is called a tacit mortgage, which is nothing more than a regulation by law, to assure the property of the minor in the custody of the parent against loss. The legislature thought proper to adopt this measure of protection as a general policy on the subject to which it relates, and as there is no constitutional restraint on its action in this regard, it can change or modify this policy whenever it thinks proper to do so. And it has so far modified it, that the natural tutor of his minor child can at any time remove the general lien on his real estate, by executing a mortgage on a specific part of it, which he is at liberty to change to other property. This course of proceeding, authorized as early as 1830, must have been generally adopted, and although the security for the minor is actually lessened by it, as a part is taken in pledge where the whole was previously bound, it does not appear that the constitutionality of the statute has ever been questioned. The wisdom of the measure is apparent, for the public good requires that the power to alienate real estate should be restricted as little as possible, and this consideration doubtless induced the legislature to depart from its original policy, which made the transfer of real estate, when owned by a parent whose minor children had property, very difficult.

The principle which allows a change of security at all, necessarily leaves the legislative power over the whole subject unabridged, and there is no right of complaint, if the legislature, in varying the nature and extent of the security, takes care that the property is preserved.

A contrary doctrine, if carried to its legitimate conclusion, would seriously interfere with the ability of the legislature to perform one of its most important duties. Charged as it is with the duty of preserving the estate of the minor, it could not change the character of the security, which it had at one period accepted as sufficient for the purpose, although it should turn out to be wholly inadequate to accomplish the object. It is not to be presumed the legislature will lessen the security, except for good cause, nor jeopard by its course

of action the estate of the minor, but, should such be the case, the corrective cannot be applied by this court.

By the statute in question, which was intended to benefit the minor children of Robb, and was an indirect mode of investing their means, under legislative direction, a change of security has been effected, and nothing more, and we cannot see how these minors, in the proper sense of the term, have been divested of any right in consequence of this change. Be this as it may, the legislature never contracted with them, or with any one in their behalf, not to use its power in this regard, and there being no contract to violate, there is no question in this case which this court can review.

JUDGMENT AFFIRMED.