(84 South. 598)

No. 23918.

## In re LEE'S TUTORSHIP.

(May 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Constitutional law ⬤⟳151—Changing security from natural tutor not invalid as impairing contract.**

As the Civil Code contemplates in article 331 that changes of securities in favor of minors may be made in legislative discretion, and as previous Legislatures had authorized modifications of security for minors in the case of natural tutors as well as in view of articles 3336, 3337, Act No. 254 of 1916, providing that natural tutors may, instead of the recordation of a certificate of the amount of the minor's property according to the inventory or the giving of a special mortgage, give security as is now provided by existing law in the case of tutors other than father and mother, is not invalid as impairing the obligation of a contract, though it authorized a natural tutor to substitute a personal bond for a mortgage.

2. **Guardian and ward ⬤⟳15—Tutorship; natural tutrix giving mortgage may substitute personal bond as security.**

Under Act No. 254 of 1916, § 1, providing that natural tutors may in all cases at their option, in place and instead of the recordation of a certificate of the amount of the minor's property according to inventory or the giving of a special mortgage, give security as in case of other than natural tutors, applies in all cases, and a natural tutrix who had already given a mortgage may thereafter substitute a personal bond.

3. **Guardian and ward ⬤⟳15—Tutorship; natural tutrix electing to give special mortgage may substitute personal bond.**

Under Act No. 254 of 1916, a natural tutrix who elected first to give a special mortgage to secure the minor may thereafter elect to give a personal bond as in the case of an ordinary tutor.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the tutorship of Margaret Lee. Petition by Mrs. Maretta Schneidau, widow of Julius Lee, who qualified as natural tutrix of the minor child, Margaret Lee, for an order substituting a personal bond for a general mortgage on real estate, opposed by the Recorder of Mortgages. From a judgment denying the petition; petitioner appeals. Judgment appealed from annulled, and judgment ordered for petitioner.

H. W. Robinson, of New Orleans, for appellant.

George Montgomery, of New Orleans, for appellee.

SOMMERVILLE, J. The trial judge, in his reasons for judgment, fully sets forth the case presented by this record, as follows:

"Mrs. Maretta Schneidau, widow of Julius Lee, qualified as natural tutrix of her minor child, Margaret Lee. The rights of the minor were liquidated at $9,570, secured by a general mortgage on real estate.

"Petitioner now prays for an order to substitute for this mortgage a personal bond ample to secure the minor, and to cancel the minor's mortgage on the real estate.

"Petitioner relies on Act No. 254 of 1916. The order prayed for is refused on the ground that it divests vested rights in the property. The act may apply to a succession when first opened, but after a mortgage on real estate has been given it cannot divest that mortgage and substitute in lieu thereof a personal security. To that extent the act is purely unconstitutional."

And the petition was denied. Plaintiff, Mrs. Maretta Lee, tutrix, has appealed.

[1] The matter of the giving of security to secure minors in their property is one which has, in this state, always been under the control and direction of the Legislature. And the principle which allows a change of security necessarily leaves the legislative power over the whole subject unabridged, and there is no right of complaint if the Legislature, in varying the nature and extent of the security, takes care that the property of the minor is preserved.

Originally all of the real estate of the natural tutor was burdened with a minor's mortgage to preserve the interests of the

minor; but such provisions of law became very burdensome, and had the effect of taking, unnecessarily at times, much property out of commerce; and in 1830 an act was passed, on page 46 of the acts of that session, providing that:

"Any surviving father or mother who shall have heretofore become, or shall hereafter become the natural tutor or tutrix, curator or curatrix of their minor child or children, may and they are hereby permitted to give a special mortgage on immovable property, not slaves, for the security of the rights and. property of their said children and the faithful discharge of their functions as tutor or tutrix, curator or curatrix aforesaid," etc.

And the general or legal mortgage was ordered canceled on the giving of such special mortgage.

And the Code appears to contemplate that such changes in securities in favor of minors may be made in legislative discretion, for it says in article 331:

"In all cases where special mortgage shall be given by tutors in lieu of the legal mortgage existing in such cases, as recognized by law, it shall be the duty of the judge receiving such special mortgage to cause the property proposed to be mortgaged to be appraised by experts, in the same manner as is provided when adjudications of the property of minors are made to their surviving father or mother; and the judge shall in no case accept the mortgage, unless the value of the property so appraised shall exceed, exclusive of all prior liens, privileges, or mortgages, the amount of the debts or rights of the minors intended to be secured by at least twenty-five per cent; the amount due the minors to be ascertained by a previous liquidation, to be made according to law, and including all interests which will probably accrue."

The legal mortgage is a right given by the law to the minor as a security for the administration of his estate by his tutors, but it is not a contract entered into between parties; and the law defining or changing the security to be given in such case cannot be said to contravene the Constitution of the United States by impairing the obligation of a contract.

And this rule is further recognized in articles 3336 and 3337, which are as follows:

Article 3336: "If the mortgage has not been restricted at the time of appointing the tutor or curator, and if it be notorious that it exceeds the amount in which it is necessary for him to give security, it shall, at his request, be restricted to certain immovables which he shall point out, provided they are thought sufficient to afford a complete guaranty."

Article 3337: "This request shall be made as in opposition to the undertutor of a minor, the undercurator of an interdicted person, or curator ad hoc appointed by the court for the absent person, and the judge shall receive the special mortgage offered if he thinks it sufficient, and with the advice of the family meeting in the case of a minor or person under interdiction."

There being no contract between the minor and his tutor, and the law having given the right of security to the minor, there can be no divestiture of any vested right in the minor where the Legislature changes the security or the nature of such security, and where there is no deprivation of the security.

"A contrary doctrine, if carried to its legitimate conclusion, would seriously interfere with the ability of the Legislature to perform one of its most important duties. Charged as it is with the duty of preserving the estate of the minor, it could not change the character of the security, which it had at one period accepted as sufficient for the purpose, although it should turn out to be wholly inadequate to accomplish the object. It is not to be presumed the Legislature will lessen the security, exept for good cause, nor jeopard by its course of action the estate of the minor, but, should such be the case, the corrective cannot be applied by this court." 9 Wall. 295, 19 L. Ed. 694.

In this view of the case, the Legislature of this state passed Act No. 133, of 1859, p. 104, for the relief of James Robb and his minor children, wherein Mr. Robb was authorized to sell his real estate, under certain formalities, free of the mortgage in favor of his minor children, and to invest the portion of the proceeds due the minors in certain bonds which were to be their property. After the property had been sold, and the pur-

chaser thereof had offered it for sale again, the title thereto was refused, on the ground that the statute, No. 133, was unconstitutional, and could not defeat the vested rights of the minors on the property of Mr. Robb.

In the case of Nelligan v. Lobrano, No. 994, on the docket of this court, decided February 3, 1868, and not reported, involving title to a piece of the Robb property, the court quoted the acts of 1826 and 1830 on the subject, providing for minor's special privileges, and proceeded to say:

"These provisions of the law have been cited to show that the mortgage in favor of the minor is simply a security for the preservation of his rights, and has always been considered under the control of the lawmaker; that the nature or species of the security has been regulated and changed by legislative action, and not deemed in conflict with constitutional principles. The lawmaker, acting for and representing the minor has provided and accepted one species of security as sufficient in his opinion, but he certainly has the right to say or agree or consent that another species will be sufficient and 'accept it for the protection of the minor's interests. The law regards the interest of the minor with paternal solicitude, and it is not to be presumed that it will design to lessen or jeopardize them. The right of the minor under the law in this regard is the right to security, which cannot be taken away, but this security may be changed in its character by the lawmaking power without divesting a right. And this, in our opinion, is all that the Legislature has really effected or permitted in the statute under consideration. Robb was authorized, under certain formalities, which it ·is admitted he has strictly observed, to sell his property on which the mortgage of his children rested, and was directed to invest the amount due them in other securities, which the Legislature deemed sufficient, which should discharge the mortgage of the minors on the property so sold; and we cannot see that any right of the minors has been thereby divested. It was merely a commutation of security. They were still provided with security, and there is nothing to show that they have any reason to complain. Or it may be viewed as an investment of the minor's funds under legislative direction. We therefore conclude that the statute is not unconstitutional, and that the property sold by plaintiff to defendant was not affected by the minor's mortgage. And this conclusion, we

think, is sustained by the whole jurisprudence of the state touching this question, particularly since the passage of the acts of 1826 and 1830."

This case, involving the commutation of minor's mortgages, went to the Supreme Court of the United States, and the decision of this court was affirmed. 9 Wall. 295, 19 L. Ed. 694. The court said in part:

"It is contended that the statute authorizing Robb to sell is invalid, because it impaired the obligation of a contract; but we think this is a mistaken view of the subject. It is certain there was no contract to violate which the parties themselves had any hand in making, and the inquiry arises whether the law has made one for them which has been impaired by this statute. It will not be questioned that the Legislature possesses the power to determine by law the manner in which the estates of infants shall be preserved, and to say what kind of security shall be given by those who are intrusted with their management, and, if so, as a necessary consequence, it has the power of altering the law on the subject whenever in its judgment the interest of the minors or the public good requires that it should be done.

"In most of the states of the Union the guardian of the property of a minor gives bond, with personal securities, for his faithful conduct; but in Louisiana, in case the father occupies that relation, a different security has been provided, for his entire real estate is bound for the proper discharge of his trust. The security is called a tacit mortgage, which is nothing more than a regulation by law to assure the property of the minor in the custody of the parent against loss. The Legislature thought proper to adopt this measure of protection as a general policy on the subject to which it relates, and, as there is no constitutional restraint on its action in this regard, it can change or modify this policy whenever it thinks proper to do so. And it has so far modified it that the natural tutor of his minor child can at any time remove the general lien on his real estate by executing a mortgage on a specific part of it, which he is at liberty to change to other property. This course of proceeding, authorized as early as 1830, must have been generally adopted, and, although the security for the minor is actually lessened by it, as a part is taken in pledge where the whole was previously bound, it does not appear that the constitutionality of the statute has ever been questioned. The wisdom of the measure is apparent; for the public good requires that the power to alienate real estate should be restricted

as little as possible, and this consideration doubtless induced the Legislature to depart from its original policy, which made the transfer of real estate, when owned by a parent whose minor children had property, very difficult.

"The principle which allows a change of security at all necessarily leaves the legislative power over the whole subject unabridged, and there is no right of complaint if the Legislature, in varying the nature and extent of the security takes care that the property is preserved.

"A contrary doctrine, if carried to its legitimate conclusion, would seriously interfere with the ability of the Legislature to perform one of its most important duties. Charged as it is with the duty of preserving the estate of the minor, it could not change the character of the security which it had at one period accepted as sufficient for the purpose, although it should turn out to be wholly inadequate to accomplish the object. It is not to be presumed the Legislature will lessen the security, except for good cause, or jeopard by its course of action the estate of the minor, but, should such be the case, the corrective cannot be applied by this court.

"By the statute in question, which was intended to benefit the minor children of Robb, and was an indirect mode of investing their means, under legislative direction, a change of security has been effected, and nothing more, and we cannot see how these minors, in the proper sense of the term, have been divested of any right in consequence of this change. Be this as it may, the Legislature never contracted with them, or with any one in their behalf, not to use its power in this regard, and, there being no contract to violate, there is no question in this case which this court can review."

[2] In view of the foregoing principles and authorities, Act No. 254 of 1916, p. 526, which is the subject of attack in this suit as being unconstitutional, is declared to be legal and valid. Section 1 of that act reads as follows:

"That natural tutors may, in all cases, at their option, in place and instead of the recordation of a certificate of the amount of the minor's property according to the inventory, or the giving of a special mortgage, give security as is now provided by existing laws in the case of tutors other than father and mother, provided, that in case such security is given by the natural tutor, the bond need not be recorded in the mortgage book of any parish in this state."

We think the language fairly implies that the act covers not only the giving of minor's mortgages or securities in the future, but that it applies "in all cases"; that is, in those cases where a general or legal mortgage has been given, or a special mortgage has been given under the prior act, the tutor may now give, in its stead, the security provided for in Act No. 254. The language "in all cases" is the equivalent of the term used in the act of 1830 (page 46):

"From and after the passage of this act any surviving father or mother who shall have heretofore become, or shall hereafter become, the natural tutor or tutrix," etc., "may be permitted to give a special mortgage on immovable property," etc.

The Legislature has the clear right, after accepting the general or special mortgage as sufficient for the purpose of securing a minor, to change the character of the security for one that is just as good, when it, in its wisdom, is not lessening the security in any way, and the minor's property is preserved to it by the different security.

[3] It is contended by the recorder of mortgages that, Mrs. Lee having exercised her option, under Act 254, by giving a special mortgage, she must abide by her action, and that she cannot thereafter change and give the security authorized in the act. There is nothing in the act which would prohibit the tutor or tutrix from giving the security provided for in Act No. 254 instead of the general or special mortgage which he or she has before given; and we conclude Mrs. Lee has that right.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed, that there be judgment in favor of petitioner, Mrs. Maretta Schneidau, widow of Julius Lee, and against the recorder of mortgages, ordering the cancellation of the special mortgage given by her in this case, on the approval of the new security by the

district judge, and which she has tendered herein. Costs of appeal will be paid by the recorder of mortgages.

O'NIELL, J., concurs in the decree.