(No. 22030.—

THE TOWN OF CHENEY'S GROVE, *vs.* GUY P. VANSCOYOC *et al.* Appellants.—(THE WARD & PROTHERO COMPANY, Appellee.)

*Opinion filed June 20, 1934.*

DeYoung, J., dissenting.
Herrick, J., took no part.
Stone, J., specially concurring.

Wirt Herrick, for appellants.

Costigan & Wollrab, and Morrissey & Morrissey, (Will F. Costigan, John J. Morrissey, and John O. Morrissey, of counsel,) for appellee.

Mr. Chief Justice Jones delivered the opinion of the court:

This case involves the validity of "An act in relation to the liability of treasurers or custodians of public funds, and the enforcement thereof," approved May 7, 1932, in force July 1, 1932. (Laws of 1932, p. 61.) The contention is that the statute is unconstitutional because it is in conflict with section 10 of article 1 of the constitution of the United States and section 14 of article 2 of the constitution of Illinois, both of which prohibit the enactment of any *ex post facto* law or law impairing the obligation of contracts.

The statute provides that no action shall lie against the treasurer or custodian of public funds which have been lawfully deposited in a bank that has closed or failed, for

a period of two years after such bank has failed or closed, except, however, he is liable to pay over whatever funds he shall receive from the officials of the closed bank or the receiver thereof, either as dividend payments or from disposition of securities pledged for the re-payment of such deposits. It is expressly provided that the act shall not apply unless the sureties upon the bond of such treasurer or custodian shall consent in writing that the provisions of the act shall not operate as a release from or affect the condition of the bond and that the bond shall continue in full force and effect.

The facts which underlie the case are: Guy P. Van-Scoyoc, supervisor and *ex-officio* treasurer of the road and bridge fund of the town of Cheney's Grove, received the proceeds of a $30,000 bond issue and deposited them in the State Bank of Saybrook. Appellee, the Ward & Prothero Company, (herein called the company,) became entitled to payments out of said fund for work done and materials furnished under a contract between the company and the township for graveling highways. Three orders payable to the company were duly drawn against the treasurer, as follows: One for $3000 dated September 26, 1931, another for $3000 dated September 30, 1931, and the third for $1071.40 dated February 1, 1932. The declaration filed in this suit avers that the orders were presented for payment first to the State Bank of Saybrook, noted as the place for payment on the face of the orders, and that payment was refused; that they were thereupon presented to the treasurer, who declined to make payment on the ground that the fund was deposited by him in said bank, that it had been closed and was in the hands of a receiver, and that he was thereby prevented from making payment.

The bank closed its doors October 6, 1931. It does not appear from the declaration or the plea whether the orders were presented to the bank before that date or afterward. It does appear, however, that the presentment to

the treasurer was subsequent to the closing. Demand was made by the company upon the town clerk to institute suit on the official bond of the treasurer. Upon his refusal to comply with that demand this suit was instituted by the company under the provisions of section 13 of chapter 103 and of section 1 of article 11 of chapter 139, (Cahill's Stat. 1933,) against the treasurer and Hannah VanScoyoc and Charles Schureman, sureties on the official bond of the treasurer. A joint plea was filed by the defendants which set up the above mentioned statute as a defense and averred that the suit was prematurely brought. A demurrer was filed to this plea with several different assignments of cause. Later the demurrer was limited to the fifth assignment, which challenged the validity of the statute on constitutional grounds. The court sustained the demurrer and the defendants elected to stand by their plea. Thereupon judgment for $5004.31 was entered against the defendants. Guy P. VanScoyoc and Hannah VanScoyoc have perfected an appeal to this court.

The act in question is one of a series of laws passed at the first special session of the Fifty-seventh General Assembly. Each bill was intended to meet a distressed financial condition prevalent throughout the State at that period. The statute before us makes no specific reference to the existence of an emergency, but a companion statute (Laws of 1932, p. 123,) entitled "An act to add section 52a to article 6 of 'An act to revise the law in relation to roads and bridges,'" provided that funds in the custody of a supervisor should be deposited in banks to be designated by the board of town auditors. It contained the following emergency clause: "Whereas, supervisors and clerks of road districts are having serious difficulty in securing sureties for bonds which they are required to execute as custodians of the road and bridge fund before entering upon the duties of their office, because of numerous bank failures, and this difficulty should be removed as expeditiously

as possible; therefore an emergency exists, and this act shall take effect upon its passage." Other instances of such legislation are:

"An act to amend section 51 of article 13 of the Cities and Villages act." (Laws of 1932, p. 20.) It contains the following emergency clause: "Whereas, it is impossible to secure depositaries for funds of cities under the commission form of government, as banks are unable to pay the rate of interest on monthly balances required by law, and legislation authorizing a lower rate should be enacted immediately, therefore an emergency exists, and this act shall take effect upon its passage."

An act to revise the law in relation to county treasurers was amended (Laws of 1932, p. 51,) and contained this provision: "Whereas, county treasurers are having serious difficulty in securing sureties for bonds which they are required to execute before entering upon the duties of their office, because of numerous bank failures, * * * therefore an emergency exists."

An amendment to the Levee act (Laws of 1932, p. 52,) recited that "whereas, treasurers of drainage districts are having serious difficulty in securing sureties for bonds and renewals thereof * * * because of numerous bank failures, * * * an emergency exists." That law provided that if the commissioners of any drainage district would, at the request of the treasurer thereof, designate a bank or banks in which the funds of the district could be deposited, the treasurer and the sureties on his bond would be discharged from all liability thereon for deposits made in the designated banks. A similar statute was passed with respect to the deposit of funds of sanitary districts.

There were upwards of fifty laws enacted at this special session of the General Assembly and an examination will show that the purpose of nearly every one of them was to meet an emergency due to the financial depression. Without regard to whether the enactment specifically re-

ferred to the emergency, the intent to meet that condition is apparent.

The contention is made that the act we are considering conflicts with the State and Federal constitutions by depriving appellee of a remedy which was available to it under the State laws at the time the contract for road work was entered into and performed. At that time there was no law to prevent the bringing of immediate suit against the treasurer and his sureties after compliance with section 1 of article 11 of chapter 139. (Cahill's Stat. 1933, p. 2711.) It has been held that a remedy subsisting at the place where a contract is made and performed is a part of the contract, and that subsequent laws which substantially impair the contract or lessen its value violate the constitution of the United States. (*Bronson* v. *Kinzic,* 1 How. 311, 11 L. ed. 143; *McCracken* v. *Hayward,* 43 U. S. (2 How.) 608.) It cannot here be contended that the statute is invalid as to all contracts. It is clear that as to contracts subsequently made the statute affects the remedy only and can in no way impair the contract or lessen its value. The assault upon the statute must be directed against its application to contracts in force when the statute was passed. In *Bronson* v. *Kinzie, supra,* it was said: "If the laws of the State passed afterwards had done nothing more than change the remedy upon contracts  *  *  *  they would be liable to no constitutional objection, for, undoubtedly, a State may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future."

There is a distinct and almost violent conflict among courts and jurists as to when a law may be said to come within the inhibition of the contract-impairment clause of the Federal constitution. Much profound discussion and extended historical references have been utilized in the presentation of the different views and philosophies. On the one hand it is held that the contract-impairment clause denies to the several States the power to mitigate hard

consequences resulting to debtors from financial or economic exigencies by an impairment of the obligation of contracts of indebtedness. On the other hand it is held that the contract-impairment clause is not an absolute, invariable prohibition and is not to be read with literal exactness, like a mathematical formula. These two views are presented in the majority and dissenting opinions in *Home Building and Loan Ass'n* v. *Blaisdell,* 290 U. S. 398, 78 L. ed. 255. Our statute, so far as it affects subsequent contracts, pertains to enforcement, merely, and whether it has additional effect as to prior contracts depends altogether on whether it releases either of the parties from a substantial fulfillment of his obligation. It is by judicial construction, alone, that the term "impairment" has been interpreted to include provisions for delay in enforcement proceedings, no matter how short the delay may be or how great its necessity. The facts in this case furnish at least as much justification as do the facts in any other case we have examined, for holding that a subsequent stay law does not constitute an impairment of the contract. Here the postponement of the right to sue is not for a definite period of two years, as claimed, after the depositary bank has closed or failed, but it is only until the treasurer has received funds from the receiver or bank officials or until he has received the proceeds of collateral which had been given him to secure his deposits. Not only that, but the right to maintain a suit against a treasurer and his sureties cannot be stayed unless the sureties consent to such stay in writing and waive and release all liability on account of such extension. These conditions distinguish this statute from those considered in the cases holding an unconditional extension of the period of time allowed for redemption constitutes an unconstitutional impairment of the obligation. The postponement here contemplated is not for two years or for any definite period of time whatever. It may run for two years or it may run for any shorter period,

depending on when the treasurer receives a dividend or other payment in satisfaction of his deposit. Therefore the bar against suit may be lifted at any time in whole or in part, but in no event can it continue more than two years.

*Bronson* v. *Kinzie, supra,* is one of the earliest and most frequently quoted cases upon this question. It held void two Illinois statutes, one which gave the owner of mortgaged premises a right to redeem within twelve months from a sale under the mortgage, and the other which provided that no sale under execution should be made for less than two-thirds of the amount at which the property had been appraised. Prior to the passage of these laws there was no statute providing a period for redemption. The holder of the mortgage had the right to sell, free and discharged from the equitable estate of the mortgagor, and to take immediate possession of the premises. It was held that the law of February 19, 1841, (the redemption statute,) did not act merely on the remedy but directly upon the contract itself and to engraft upon it new condition injurious and unjust to the mortgagee. This holding as to the actual effect of the legislation appears to be the basis for the conclusion that the law fell within the contract-impairment provision of the Federal constitution. Mr. Chief Justice Taney delivered the opinion of the court. He said: "It [the statute] declares that although the mortgaged premises should be sold under the decree of the court of chancery, yet that the equitable estate of the mortgagor shall not be extinguished but shall continue for twelve months after the sale; and it moreover gives a new and like estate, which before had no existence, to the judgment creditor, to continue for fifteen months. If such rights may be added to the original contract by subsequent legislation it would be difficult to say at what point they must stop. An equitable interest in the premises may in like manner be conferred upon others, and the right to redeem may be so prolonged as to deprive the mortgagee of the

benefit of his security by rendering the property unsalable for anything like its value. This law gives to the mortgagor, and to the judgment creditor, an equitable estate in the premises which neither of them would have been entitled to under the original contract, and these new interests are directly and materially in conflict with those which the mortgagee acquired when the mortgage was made. Any such modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations and is prohibited by the constitution." As to the law which prohibited sales being made for less than two-thirds of the appraised value of the premises it was said: "The observations already made in relation to the other act apply with equal force to this. It is true that this law apparently acts upon the remedy and not directly upon the contract, yet its effect is to deprive the party of his pre-existing right to foreclose the mortgage by a sale of the premises and to impose upon him conditions which would frequently render any sale altogether impossible."

The present law grants no new rights or estates to anyone. It cannot be said with any degree of assurance that it takes away or deprives a creditor of any substantial right or remedy or imposes any new conditions injurious or unjust to him or that it imposes conditions upon him which would render impossible the collection of his debt.

During the years from 1929 to 1933, inclusive, there were nearly one thousand banks in Illinois which definitely suspended operations, without reference to the general bank moratorium declared by the President of the United States. Suits against treasurers and custodians of public funds on their official bonds would not only menace an already precarious business condition, but would tend to destroy the ability of those liable on official bonds to comply with their obligations. Speculation as to whether or not the creditor was more benefited than harmed by the legislation is not

justified in reaching a legal conclusion, but the fact remains that it does not appear with any semblance of certainty that the creditor has been injured by a modification of one of his remedies. He was still free to bring suit against the town and to enforce collection through other available means. The prohibition is only against his suing on the official bond during a time not exceeding two years in which the treasurer's deposit account is being liquidated. It will be observed that the town, and not the treasurer and his sureties, was the obligor to pay under the contract. The right of the company to bring suit on the official bond was a remedy given only by statute.

In *Ogden* v. *Saunders,* 12 Wheat. 286, 6 L. ed. 631, it was said: "To assign to contracts, universally, a literal purport, and to exact for them a rigid, literal fulfillment, could not have been the intent of the constitution. It is repelled by a hundred examples. Societies exercise a positive control as well over the inception, construction and fulfillment of contracts as over the form and measure of the remedy to enforce them." The Supreme Court of the United States in *Penniman's case,* 103 U. S. 714, 26 L. ed. 602, declared: "The general doctrine of this court on this subject may be thus stated: In modes of proceeding and forms to enforce the contract the legislature has the control and may enlarge, limit or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right." Notwithstanding the varying expressions which are to be found in judicial opinions treating the subject of postponement or delay, we think it can be safely said that a statute which is directed at a remedy cannot be held to be invalid unless it has the effect of diminishing or depriving one of the contracting parties of the effective enforcement of the contractual obligation.

That power of the State which is known as the police power is an exercise of the sovereign right of the gov-

ernment to protect the lives, health, morals, comfort and general welfare of the people and is paramount to any rights under contracts between individuals. (*Manigault* v. *Springs,* 199 U. S. 473, 50 L. ed. 274.) As was said in *Levy Leasing Co.* v. *Siegel,* 258 U. S. 246, 66 L. ed. 595, one of the New York Housing cases: "The warrant for this legislative resort to the police power was the conviction on the part of the State legislators that there existed in the larger cities of the State a social emergency, caused by an insufficient supply of dwelling houses and apartments, so grave that it constituted a serious menace to the health, morality, comfort, and even to the peace, of a large part of the people of the State. That such an emergency, if it really existed, would sustain a resort, otherwise valid, to the police power for the purpose of dealing with it can not be doubted, for unless relieved the public welfare would suffer in respects which constitute the primary and undisputed, as well as the most usual, basis and justification for exercise of that power."

The Supreme Court of the United States, in *Lobrano* v. *Nelligan,* 9 Wall. 295, 19 L. ed. 694, declared that the legislature has the power of altering the law concerning the kind of security to be given by those who are entrusted with the management of estates whenever the public good requires it to be done, and the fact that the law substitutes one kind of security for another and affects the administration of estates then pending does not violate the contract-impairment clause of the constitution.

We have shown by the declarations of the legislature that treasurers and custodians of public funds were seriously embarrassed and handicapped in their efforts to give official bonds. It is needless to expatiate upon the necessity of having responsible men act as such custodians. Difficulties like those then encountered affected the availability of such men to qualify as public officials. In the perilous times when this law was enacted, men of that

type could not be expected to assume the responsibility incident to the office unless the public offered a reasonable assurance of protection. Treasurers are trustees for the public and the public is interested in their protection. The liquidation of a bank is affected with a public interest. When a bank is in the hands of a receiver appointed by the Auditor of Public Accounts the funds which he takes over are *in custodia legis*. Were it not for a statute of the kind in question we would be confronted by the anomalous situation of the State's seizing the funds of a treasurer for the purpose of the bank's liquidation and at the same time giving a right of action against the treasurer on his official bond for money which the State withholds from him. The right of a creditor to the aid of the public arm for the recovery on contracts is not absolute and unlimited but may be modified by the necessities or policy of society. The right to pass bankruptcy laws is asserted by every civilized nation in the world, and it has never been suggested that the power of annulling such contracts, universally exercised under their bankruptcy or insolvency systems, involves a violation of the obligation of contracts. (*Ogden* v. *Saunders,* 12 Wheat. 214.) Circumstances may so change in time and so differ in space as to clothe with such an interest what at other times or in other places would be a matter of purely private concern. The notion cannot be maintained that what in its immediate aspect may be only a private transaction may not be raised by its class or character to a public affair. (*Block* v. *Hirsh,* 256 U. S. 135, 65 L. ed. 65.) An enactment does not suspend any constitutional inhibition which merely recognizes the doctrine that public interest may under stress of emergency attach itself and make legal recognition necessary when at other times and under other conditions no such necessity would appear and the interest would be a matter of purely private concern.

In our opinion the challenged statute is not offensive to any of the provisions of the Federal or State constitution. Appellee has not been effectively injured or prejudiced in its contractual rights or remedies.

Since this cause was submitted to us for consideration the case of *Home Building and Loan Ass'n* v. *Blaisdell, supra,* was decided by the Supreme Court of the United States. A statute of the State of Minnesota was under consideration. It provided for an extension of the period for redemption in cases of sales under mortgage, judgments and executions upon application to a court of competent jurisdiction and upon condition that the mortgagor or judgment debtor pay a reasonable income or rental value, together with the payment of taxes, insurance and interest during the extended period. The same challenge made against our statute was made against the Minnesota statute. The Supreme Court of the United States held that the statute was not vulnerable on constitutional grounds. The views expressed by us are in harmony with the holdings in the *Blaisdell case.* Nevertheless, we are urged not to follow the majority opinion in the *Blaisdell case* but to accept the doctrines announced in the dissent to that opinion. Even if we were inclined to accept them, (and we are not,) we are not permitted to do so. Paragraph 2 of article 6 of the constitution of the United States is as follows: "This constitution and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding." Of necessity, the Supreme Court of the United States possesses final jurisdiction in all cases affecting the Federal constitution. Were it not so, the several State courts, in passing upon construction and interpretation, would produce inevitable contradiction and confusion.

Chancellor Kent, in his Commentaries, (vol. 1, p. 308,) said that "nothing can be plainer than the proposition that the Supreme Court of the nation must have power to revise the decisions of local tribunals on questions which affect the nation or the most important ends of the government might be defeated and we should be no longer one nation for any efficient purpose. The doctrine would go to destroy the great fundamental principles on which the fabric of the Union stands." There can be no uniformity of decision throughout the United States unless this rule is firmly adhered to. The propriety of entrusting the construction of the constitution, and laws made in pursuance thereof, to the Supreme Court of the United States must be admitted. The necessity of uniformity, as well as correctness in expounding the constitution and laws of the United States, would itself suggest the propriety of vesting in some single tribunal the power of deciding, in the last resort, all cases in which they are involved. (*Cohens* v. *Virginia*, 6 Wheat. 264, 5 L. ed. 257.) The Supreme Court of the United States will determine for itself whether a given enactment violates the constitution of the United States. (*United States* v. *Reynolds*, 235 U. S. 133, 59 L. ed. 162.) Where a suit in a State court involves a question arising under the constitution, laws or treaties of the United States, or, in other words, what is commonly called a Federal question, a decision of the United States Supreme Court upon the point at issue is to be regarded as absolutely binding and authoritative, and in such case if the Supreme Court of a State should entertain a different view it will follow the Federal Supreme Court, reversing and overruling, if necessary, its own previous decisions to the contrary. (*Rothschild & Co.* v. *Steger Piano Co.* 256 Ill. 196.) Acquiescence in its decisions, though frequently reached by a bare majority of its members, is an essential element in the great regard entertained by the American people for the highest judicial tribunal in the land and furnishes a

strong assurance of the stability of our government. A proper respect by all other judicial bodies for its decisions in matters involving Federal rules is a safeguard to the lives, liberty and property of the people.

The circuit court of McLean county was in error in sustaining the demurrer to the defendants' plea and entering judgment in favor of appellee.

The judgment of the circuit court is therefore reversed and the cause is remanded to that court, with directions to overrule the demurrer and for further proceedings in conformity with our views.

*Reversed and remanded, with directions.*

Mr. JUSTICE DEYOUNG, dissenting.

Mr. JUSTICE HERRICK took no part in this decision.

Mr. JUSTICE STONE, specially concurring:

I concur with the judgment here entered but not with the reasons given in support of it. It is not argued that an act of the General Assembly affecting the remedy by which a contract may be enforced, but which act is not made applicable to contracts existing at the time of its enactment, offends against the contract clause of the constitution of the United States.

It may be observed that the suit before us is not on the contract with the town but is an action in debt on the treasurer's bond by judgment creditors of the town, and, though in the name of the town, is so brought after the refusal of the town to sue. The act here under consideration went into effect some five months before the contractors acquired the right to sue on the bond, and the question therefore arises whether, under the facts of this case, the act suspending for a period of two years the right to sue on a treasurer's bond impairs the obligation of a contract existing when the act went into effect. Whether it does, depends on whether there was any contractual obligation

existing between the treasurer and his sureties on the one hand and the contractors on the other, prior to the enactment of the statute. If such contractual obligation did not exist between them at that time, then, clearly, such obligation arose after the passing of the act. The right of the contractors, after having procured judgment against the town, to sue in the name of the town for their use is not disputed.

While the conditions of the treasurer's bond are that he shall pay lawful orders that come into his hands, the bond was not made primarily for the benefit of creditors of the town but for the town. To say that a claimant against the town may sue the treasurer without first reducing to judgment his claim against the town is to hold the treasurer liable to suit without regard to frailties in the contract with the town. The rights of these contractors, before their judgment against the town was obtained, were fixed by the contract and the contractual obligations arising thereon, and were the same without regard to the condition of the town treasury. Those obligations ran against the town. Nor are any obligations under that contract impaired by this act. The contractors had a right to proceed to judgment against the town, and they did so. They have full right to require, by appropriate action, the payment of this judgment against the town, and this without regard to whether there is any money in the town treasury.

The doctrine that a third party may maintain an action upon a contract made for his benefit is not applicable to every contract by the performance of which such third person may derive a benefit, but is limited to contracts which have for their primary object and purpose the benefit of such third person and which are made for his direct benefit. (*Carson Pirie Scott & Co.* v. *Parrett,* 346 Ill. 252; *Kinnan* v. *Hurst Co.* 317 id. 251; *Searles* v. *City of Flora,* 225 id. 167.) In this case the bond sued upon was not issued primarily for the direct benefit of the contractors.

They had no connection with it, and in the absence of a judgment against the town the contractors had no right to sue on this bond. This conclusion is in accord with the principles laid down in *Kinnan* v. *Hurst Co. supra, Searles* v. *City of Flora, supra,* and *Connolly* v. *Bolster,* 187 Mass. 266, 72 N. E. 981. The liability of appellants in this case is on the bond. They are required by the obligations thereof to respond primarily to the town. The obligations appearing therein cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability. *Carson Pirie Scott & Co.* v. *Parrett, supra; Hageman* v. *Holmes,* 179 Ill. 275.

What is sought here is to enforce an obligation of the treasurer to the contractors which did not come into existence until after the passing of the act here attacked. The suit is not one to enforce a contractual obligation existing between the contractors and appellants prior to the entry of the judgment of the former against the town but their right to bring this suit grows out of that judgment. Though it be conceded that the effect of the act of May 7, 1932, is to impair the obligation of contracts existing at the time it was enacted and as to such contracts is without force, it cannot be here held invalid, as applied to the facts of this case, for the reason that prior to its enactment no contractual obligation existed between appellants and these contractors. An act affecting remedies, which does not apply to pre-existing contracts, does not offend against the contract clause. *Bronson* v. *Kinzie,* 1 How. 311, 11 L. ed. 143; *Edwards* v. *Kearzey,* 96 U. S. 595, 24 L. ed. 793; *Barnitz* v. *Beverly,* 163 id. 118, 41 L. ed. 93.

I am of the opinion that, as applied to the facts of this case, the act is not invalid, and for that reason the demurrer to the plea of the appellants should have been overruled.