The facts, as stipulated by the parties and found by the court, reveal the following: The defendant, a corporation doing business in the state of Connecticut, issued a policy of insurance to Mohamed Abdulraham. The policy provided for no-fault reparation payments as required by chapter 690 of the General Statutes. On November 19, 1975, the insured filed an application for no-fault benefits on behalf of his son who sustained personal injuries when struck as a pedestrian by an automobile on November 11, 1975. The defendant duly honored *Page 665 
the application and paid medical bills totaling $1321.02. The insured retained the plaintiff, an attorney-at-law duly licensed in Connecticut, to act as his attorney on behalf of his son to obtain indemnification from the alleged tortfeasor for his son's bodily injuries. By letter dated January 6, 1976, the plaintiff advised the defendant that he represented their insured, Mohamed Abdulraham, and by letter dated January 12, 1976, the defendant notified the plaintiff that it had paid no-fault benefits on behalf of the plaintiff's client in the amount of $1321.02, and that it would seek reimbursement of all funds paid under the no-fault statutes. On March 29, 1976, the plaintiff informed the defendant of a prospective settlement and requested that it consider compromising its no-fault lien by 50 percent. By letter dated March 31, 1976, the defendant advised the plaintiff that under no circumstances would it compromise its claim as it had a strict policy of seeking full reimbursement. On May 21, 1976, the plaintiff notified the defendant that a settlement was being made with a third party and that it would be reimbursed in the sum of $1321.02 and, in fact, on June 1, 1976, the plaintiff forwarded to the defendant his trustee check in the full amount of $1321.02. On July 12, 1976, the plaintiff wrote to the defendant stating that due to his efforts the defendant had obtained that reimbursement and that, on the theory of quantum meruit, he valued his services at 25 percent of the amount recovered. He demanded payment in the amount of $330.25. On the following day the plaintiff was informed by the defendant that it had refused to honor his claim. At no time did the defendant request the plaintiff to act as its attorney and at no time was there a lawyer-client relationship between the plaintiff and the defendant.
Although the plaintiff in his assignment of errors has made a wholesale attack on the court's *Page 666 
conclusions, his brief raises two main issues which we shall consider. The first argument made by the plaintiff challenges the applicability of 38-325 (b)[1] of the General Statutes on the ground that the statute is limited to recoveries by way of court judgments and not by way of settlements. The second argument contends that the plaintiff is entitled to payment because of unjust enrichment on the part of the defendant.
The plaintiff's claim that a recovery of damages by way of a settlement rather than a judgment precludes the defendant from invoking the provisions of 38-325 (b) is without merit. To accept this argument would be to construe narrowly the statute. The court is being asked to limit application of the phrase "recovers damages" to judgments and not to settlements. It is a cardinal rule of construction that statutes are to be construed so that they carry out the intention of the legislature. Hurlbut v. Lemelin, 155 Conn. 68,73. This intent is to be ascertained from the language of the statute itself, if that language is plain and unambiguous. Landry v. Personnel Appeal Board, 138 Conn. 445, 447. "Where the legislative intent is clear, and the language used to express it is unambiguous, there is no room for statutory construction." Holmquist v. Manson, 168 Conn. 389, 392-93. In Webster's Third New International Dictionary, "damage" is defined as "loss due to injury." "The intention of the legislature, expressed in the language it uses, is the *Page 667 
controlling factor and the application of common sense to the language is not to be excluded." United Aircraft Corporation v. Fusari, 163 Conn. 401, 410-11.
In addition, in examining the legislative history of this particular statute, we note that an attempt was made in the 1976 session of the General Assembly to amend 38-325 of the General Statutes. This amendment would have provided for reimbursement to the insurer of an amount reduced by a prorated amount for attorney's fees incurred by the insured. This attempt was not successful. "Rejection by the Legislature of a specific provision is most persuasive that the act should not be construed to include it." State v. Nelson,126 Conn. 412, 418.
The issue of unjust enrichment does not require extensive discussion. In order to be successful in his claim that the defendant was unjustly enriched, the plaintiff was required to prove that the defendant was benefited and that the benefit received was unjust. Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242, 246. The mere fact that the defendant has benefited incidentally through the efforts of the plaintiff in the representation of his client does not require the defendant to pay the plaintiff for that incidental benefit. The defendant had a lien on any recovery of damages by the plaintiff's client. Since there was a contract of employment between the plaintiff and the insured, there was an obligation on the part of the insured to pay the plaintiff. There was no lawyer-client relationship between the plaintiff and the defendant. The benefit enjoyed by the defendant resulted from the provisions of 38-325 (b) of the General Statutes and, therefore, is not unjust.
 There is no error.
In this opinion A. HEALEY and PARSKEY, Js., concurred.