METRO EAST SANITARY DISTRICT *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF SAUGET, Defendant-Appellant.

Fifth District   No. 5—84—0157

Opinion filed February 21, 1985.

654

Kenneth R. Heineman, Ellen E. Bonacorsi, and Ronald L. Hack, all of Coburn, Croft & Putzell, of Belleville, and James C. Craven, P.C., of Springfield, for appellant.

Robert J. Sprague and Bernard J. Ysursa, both of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs, the Metro East Sanitary District, the village of Cahokia, the Commonfields of Cahokia Public Water District, and John R. Sprague, Sr., filed this complaint against the village of Sauget for breach of contract, in the circuit court of St. Clair County. All of the parties except Sprague are municipal corporations. The circuit court awarded summary judgment against the village of Sauget as follows: In favor of the Metro East Sanitary District and Sprague, $168,000; in favor of the village of Cahokia and Sprague, $168,000; and in favor of the Commonfields of Cahokia Public Water District and Sprague, $168,000; prejudgment interest was awarded as to all of these amounts. The village of Sauget appeals.

From the pleadings, and numerous exhibits and affidavits on file, we glean the following undisputed facts: After extended negotiations, by September 6, 1977, letter to each of the corporate plaintiffs, the village of Sauget extended an offer concerning a proposed sewage treatment system for the region. According to this letter, which the parties refer to as "the Regional Agreement," said offer superseded all previous offers on that subject. The Regional Agreement spans 20

printed pages and 63 numbered paragraphs. Paragraph 24 of the Regional Agreement states in pertinent part:

"The regional revenue bonds issued by Sauget shall include sufficient funds to reimburse East St. Louis, Cahokia, Water District and Sanitary District for fees which such party has paid or become contractually obligated to pay to its attorney or attorneys on or after December 1, 1972 as the direct and proximate result of the regional treatment proposition, the negotiations which resulted in this agreement and the issuance of the regional revenue bonds.

The reimbursable amount due to any one of said parties shall not exceed four-tenths of one percent (0.4%) of the initial amount of regional revenue bonds issued by Sauget."

Between September 7 and 12, 1977, each of the corporate plaintiffs passed a resolution authorizing the hiring of Sprague as attorney representing each of the corporate plaintiffs in matters relating to the subject matter included in the Regional Agreement. Each of the corporate plaintiffs also executed a written contract employing Sprague at a flat rate of 0.4% of the revenue bonds issued by the village of Sauget. Said contracts are essentially identical. Each provides that Sprague be paid directly by the village of Sauget from the proceeds of the bonds when sold, and that Sprague would receive no fees or compensation in the event that the proposed sewage treatment plant was not completed or the bonds not sold.

During January 1983 each of the plaintiff corporations passed a resolution stating that the revenue bonds had been issued and delivered and that Sprague was not entitled to receive his fees pursuant to the contracts between Sprague and the respective plaintiff corporations. By letter to village of Sauget Mayor Paul Sauget, dated February 21, 1983, village of Cahokia Mayor Michael King stated that he did not feel it was necessary that an accounting of hours spent or detail of work performed by Sprague be furnished in view of paragraph 24 of the Regional Agreement and the "contingent attorney fee contract" thereafter entered into by the village of Cahokia and Sprague. In said letter, Mayor King praised Sprague's efforts since 1972 on the sewage treatment system project and requested that Sprague's fee be paid.

The complaint stated that bonds in the amount of $42,000,000 had been sold. Each of the plaintiffs requested damages in the amount of Sprague's fees. The village of Sauget answered, asking that the complaint be dismissed and raising the "affirmative defenses" that (1) the village of Sauget was not a party to any agreement between any of

the corporate plaintiffs and Sprague, and hence not liable thereunder, and that (2) each of the corporate plaintiffs had breached its "implied duty of good faith under the Regional Agreement" and thereby relieved the village of Sauget of its duty of performance thereunder. The village of Sauget also filed interrogatories directed to Sprague, in which the village of Sauget, *inter alia*, requested that Sprague set forth the nature of the legal services rendered in connection with the matter in question, the number of hours expended, and other details of the work performed. Plaintiffs moved to strike the village of Sauget's answer, objected to said interrogatories, and moved for an extension of time in which to answer said interrogatories.

At the January 5, 1984, hearing on plaintiffs' motion for summary judgment, the village of Sauget objected to summary judgment's being considered prior to discovery. Counsel for the village of Sauget admitted at this hearing that some attorney fees were due and owing, but urged that the amount thereof could not be determined absent Sprague's statement of hours and detail of work.

The circuit court granted summary judgment for each of the corporate plaintiffs and Sprague in the amount of $168,000 as to each corporate plaintiff (*i.e.*, 0.004 x $42,000,000) plus prejudgment interest.

The village of Sauget appeals, seeking that this court reverse the summary judgment of the circuit court and remand for further proceedings. Summary judgment should be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).

■■ ■ The village of Sauget argues that Sprague was not intended to be a direct beneficiary of the Regional Agreement and thus cannot sue on the contract in the status of third-party beneficiary. If a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct, he may sue on the contract; if incidental, he has no right of recovery thereon. Each case must depend on the intention of the parties as gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. The right of the third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must appear from the language of the instrument when properly interpreted and construed.

The liability so appearing cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, 919.) As people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration. (17 Am. Jur. 2d *Contracts* sec. 304, at 730; *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373-74, 432 N.E.2d 1009, 1011.) We think that paragraph 24 of the Regional Agreement plainly demonstrates that the attorney or attorneys were intended to benefit from the contract, and said attorneys are sufficiently identified therein. If the attorney or attorneys were not intended direct beneficiaries, why does the Regional Agreement, the subject of which was a sewage treatment system, expressly refer to attorney fees? Such mention, having little to do with the project itself, goes far in rebutting any presumption that the parties intended to stipulate only for themselves. Moreover, this mention was made in a context which shows that the parties anticipated that attorney services would be provided on credit and desired to make express arrangement for payment thereof. (See *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) Since the 1977 Regional Agreement refers to reimbursement of fees for services rendered since 1972, and since the Regional Agreement was by its own terms the result of negotiations between the parties thereto, it seems natural to conclude that when the Regional Agreement was executed the village of Sauget was well aware of Sprague's status as counsel for the corporate plaintiffs. We conclude that Sprague is a proper party plaintiff in this case.

■ Next, the village of Sauget argues that paragraph 24 of the Regional Agreement relating to reimbursement of attorney fees is ambiguous. While the trial court evidently viewed paragraph 24 as permitting an attorney fee up to 0.4% of the bonds issued, the village of Sauget argues that a reasonable alternative interpretation of paragraph 24 is "that reimbursement on the basis of contingent percentage or fixed amount attorneys' fee arrangements, where the arrangements provided for payment of the maximum amount allowed under the Regional Agreement, was excluded." We find this a strained interpretation, not a reasonable one. Any particular interpretation that only one of the parties may have envisioned at the time the contract was executed is immaterial. (*Smith v. Vernon* (1972), 6 Ill. App. 3d

434, 286 N.E.2d 99.) The instant contract should not be read as prohibiting that which by its express terms it appears to permit.

■■ The village of Sauget argues that plaintiffs' complaint was insufficient to support summary judgment in plaintiffs' favor. The village of Sauget contends that plaintiffs failed to allege in their complaint or show in submitted affidavits that the corporate plaintiffs had in fact paid or become contractually obligated to pay attorney fees, since under Sprague's contracts with the respective corporate plaintiffs, the latter were not obligated to pay Sprague's fees directly. We disagree with the village of Sauget's interpretation. Plaintiffs' complaint alleged that as a result of issuance of the bonds, Sprague's fees were due and owing. The Regional Agreement provided that the village of Sauget would issue sufficient bonds to reimburse the corporate plaintiffs for fees which each had paid or should become "contractually obligated to pay." Each of Sprague's fee contracts with the respective corporate plaintiffs provided that as soon as the village of Sauget had received the proceeds of the bonds issued, Sprague's fees would be due and payable. Issuance and sale of the bonds is not in dispute. Taken together, these matters sufficiently showed that the corporate plaintiffs had become contractually obligated to pay attorney fees. Further, while Supreme Court Rule 133(c), relied on by the village of Sauget, states that a general allegation that a plaintiff has performed all the contractual conditions on his part is sufficient, the Rule does not purport to require such general allegation. See 87 Ill. 2d R. 133(c).

The village of Sauget contends that plaintiffs' complaint and affidavits allege mere legal conclusions rather than the facts necessary to support summary judgment. This argument ignores the various exhibits, including the Regional Agreement, the fee contracts, and various written correspondence, which must be considered together with the pleadings and affidavits (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c)) and which amply demonstrate the facts necessary to support the judgment.

The village of Sauget argues that the circuit court erred in finding as a matter of law that the contingent fee contracts between Sprague and each of the plaintiff corporations were reasonable, as there was no evidence before the court from which reasonableness could have been determined. In so arguing, the village of Sauget characterizes paragraph 24 of the Regional Agreement as an indemnity agreement regarding attorney fees. The village of Sauget emphasizes that no accounting of hours spent by Sprague or work done during such hours has been rendered, thus making a determination of reasonableness im-

possible. The apparent thrust of the village of Sauget's contention in this regard is that if the fee contracts were not reasonable, the corporate plaintiffs breached their respective duties under the Regional Agreement, thus relieving the village of Sauget of all or part of its obligation to pay Sprague's contingent fees.

■ Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play. Where contractual discretion is exercised in bad faith, as opposed to mere erroneous judgment, the contract is breached. (*Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 29-30. 421 N.E.2d 1375, 1381.) We think that, as a matter of law, the instant fee contracts were reasonable in light of the circumstances confronting the respective corporate plaintiffs when the fee contracts were executed: Each corporate plaintiff, by entering into a contingent fee contract, ensured that that party would not be directly liable for any fees under any circumstances. Such was not true if an attorney was hired on an hourly basis. If no bonds had been sold, no fees would have accrued under the contingent fee contracts, whereas if plaintiff corporations' attorneys were paid by the hour, fees would have been owed even if bonds had not been sold and the sewage treatment project had ultimately failed to materialize. The village of Sauget would not be required to reimburse any fees in those circumstances. Even if the project were completed, an hourly fee arrangement could have resulted in fees in excess of the maximum amount the village of Sauget had agreed to reimburse. On the whole, then, we agree with the circuit court that a contingent fee arrangement was reasonable as a matter of law under the circumstances confronting the plaintiff corporations.

■ Was the percentage fee agreed upon reasonable as a matter of law? Again, the answer is yes. It is apparent from Sprague's involvement in the proposed sewage treatment system since 1972 that Sprague was well aware of the provisions of the Regional Agreement as executed. Thus, in negotiations (if any) between Sprague and the corporate plaintiffs, Sprague was aware of the amount the village of Sauget had agreed to reimburse; he knew that the corporate plaintiffs would not be directly liable in this amount; *i.e.*, he knew that the corporate plaintiffs had no bargaining position up to and including the full amount of agreed reimbursement. Thus, not only was the percentage fee agreed upon reasonable in view of paragraph 24 of the Regional Agreement, but it would indeed have been surprising had any other fee arrangements been reached under the circumstances con-

fronting the corporate plaintiffs at the pertinent time.

While we find no truly similar reported cases, we find support for the trial court's conclusion that the fee contracts were reasonable by analogizing to cases involving third-party settlements. In *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367, this court held that an otherwise valid complaint for indemnity should not be dismissed merely because the third-party defendant settles with the original plaintiff. The court observed that the compromise of a disputed claim will provide the consideration for a settlement agreement, even if the claim is not shown to have been valid, as long as it was asserted in good faith. (110 Ill. App. 3d 729, 735, 442 N.E.2d 1367, 1372.) In *Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112, the employee of a masonry contractor brought an action for personal injuries against the owner of a building; the owner brought a third-party action against the masonry contractor, alleging, *inter alia*, contractual indemnity. The masonry contractor contended that settlement of the primary claim had prevented adjudication of the amount of the indemnification and left no basis for a judgment based on indemnity. Rejecting this contention, the court held it sufficient that in settling the primary claim the defendant and third-party plaintiff was confronted with and had responded to a reasonable anticipation of liability rather than acting as a mere volunteer. 37 Ill. App. 3d 636, 651-52, 347 N.E.2d 112, 123-24.

In light of *LeMaster* and *Nogacz*, we conclude that the appropriate inquiry in the instant case is not whether hindsight has revealed that the fee agreements between Sprague and the plaintiff corporations represented a good bargain for the plaintiff corporations based on actual work done, but rather whether those agreements were reasonable in light of the potential liabilities confronting the plaintiff corporations at the time of execution of the fee agreements. As we have noted above, the answer to that question is yes.

■ *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 405 N.E.2d 1322, urged by the village of Sauget, does not require the conclusion that a triable issue of fact appeared as to the reasonableness of the instant fee contracts. In *Wilson-Jump*, the court stated that an indemnitee pursuant to a contract is required to establish what were reasonable attorney fees and that the indemnitor is not necessarily liable for the amount the indemnitee unilaterally agreed to pay or did pay its lawyer. (85 Ill. App. 3d 179, 182, 405 N.E.2d 1322, 1325.) We agree with this proposition of law, but conclude that reasonableness should be determined from the cir-

cumstances existing when the contract was executed.

■■ The village of Sauget contends further that the issue of reasonableness of the fee contracts should have been submitted to a jury rather than decided by the trial court as a matter of law. However, the village of Sauget's "affirmative defense" that each of the corporate plaintiffs breached its duty of good faith toward the village of Sauget is essentially based only on the Regional Agreement and the fee contracts; thus, reasonableness is here determined from undisputed facts. While summary judgment should not be entered even if there is no dispute in the evidence, if reasonable persons could draw different conclusions from the undisputed evidence (*Martin v. Hertz Corp.* (1982), 104 Ill. App. 3d 592, 594, 432 N.E.2d 1262, 1264), we are unable to view the instant evidence as fairly supporting the conclusion that the instant fee contracts were unreasonable when executed.

■■ The village of Sauget argues that Sprague did not have valid, enforceable contracts with the respective corporate plaintiffs, since the latter were not obligated to pay his fees directly. We disagree for the same reasons that we rejected the village of Sauget's "condition precedent" argument. We view the provision in the fee contracts holding the corporate plaintiffs harmless from direct liability for Sprague's fees as a credit arrangement, not sufficient to vitiate an otherwise valid contract.

■■ Finally, the village of Sauget argues that the trial court improperly interpreted the word "reimburse" in the Regional Agreement. The village of Sauget also complains regarding the court's passing reference to the insufficiency of the denials included in the village of Sauget's answer. We do not view these matters as essential to the judgment complained of. It is the judgment and not what else may have been said by the trial court that is on appeal, and the judgment may be sustained if warranted by the record regardless of whether the reasons given by the trial court were correct. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.