**OLD REPUBLIC INSURANCE COMPANY, Plaintiff,**

v.

**SIDLEY & AUSTIN, Defendant.**

No. 88 C 6333.

United States District Court, N.D. Illinois, E.D.

Dec. 14, 1988.

Richard A. Devine, Bruce R. Meckler, Fred A. Smith, Phelan Pope & John, Ltd., Chicago Ill., for plaintiff.

Stephen C. Carlson, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

█ Defendant moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the plaintiff's complaint. In such circumstances any inference drawn must be favorable to the plaintiff, *United Milk Products Co. v. Michigan Avenue National Bank of Chicago*, 401 F.2d 14, 17 (7th Cir.1968), and the allegations contained in the complaint are to be accepted as true. *National Van Lines, Inc. v. United States*, 326 F.2d 362, 372 (7th Cir.1964); 5 Wright, Miller & Cooper, Federal Practice and Procedure § 1363 at 656 (1969). We deal herein with only procedural matters and leave the disposition of the underlying dispute to either another court or to this court for another day.

## FACTS

Because we conclude that Old Republic lacks proper standing, the court has recited only those facts relevant to our disposition of the pending motion on that ground. The trustees of the Bradley Trusts procured a primary directors' and officers' liability ("D & O") policy from the Federal Insurance Company ("Federal"). The policy covered the period from May 28, 1985 to May 28, 1986 and provided $5 million in coverage per loss and in the aggregate. Old Republic Insurance Company ("Old Republic") issued to the trustees an excess D & O policy that provided $3.5 million per loss and in the aggregate for liability coverage beyond the Federal policy, for the same period. The Old Republic policy adopted and applied substantially the same terms and conditions as the Federal policy.[1] "Loss" was explicitly defined to include "defense costs," another defined term.[2]

Two of the beneficiaries of the Bradley Trusts brought suit in Wisconsin state court seeking removal of the trustees and a division of the Bradley Trusts. The trustees obtained the consent of Federal to retain the law firm of Whyte & Hirschboeck ("Whyte") to act as defense counsel in the litigation. From July 1986 through and including August 1987 Whyte served as the trustees' litigation counsel. In August the trustees obtained Federal's consent to retain the law firm of Sidley & Austin ("Sidley") to replace Whyte as defense counsel. At all relevant times the law firm of Foley and Lardner ("Foley") served as the trustees' general counsel.

The trial began on October 6, 1987 and continued for several months.[3] In late February 1988 the parties agreed to submit a stipulation to the trial court which provided the court with three options as to the entry of judgment. The court chose the second of the three options and thereby awarded the objecting beneficiaries $3 million and permitted the appointment of new trustees.

About a week later the trustees and Old Republic entered into an agreement (cplt.

---

1. The Old Republic policy was to "apply in like manner as the underlying insurance" (cplt. ¶ 11) (*quoting* the Old Republic policy).

2. "Defense Costs means that part of Loss consisting of costs, charges and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Insured Organization) incurred in defending, investing or monitoring legal actions, claims or proceedings and appeals therefrom and the cost of appeal, attachment or similar bonds" (the Federal policy, cplt. at exh. 1, ¶ 9.1).

3. The semantic distinction between several months and 34 actual trial days (*see* pl.mem. in opp. at 4) is irrelevant to the motion at issue here.

exh. 5) ("the agreement") documenting the obligations of both parties under each of the three options the court had available. Paragraph 3(b) thereof provides that if option 2 were chosen, and if the trustees made the appropriate demand to Federal, then

> ... Old Republic shall satisfy all remaining obligations of the Trustees in the Bradley Trust Litigation, including any unpaid portion of the determination, and any and all unpaid legal fees and litigation expenses related to the Bradley Trust Litigation and properly payable under the terms, provisions and conditions of Federal policy numbers 7838–95–19 and (87) 7938–95–19 or Old Republic policy number CUG 20691.

*Id.* at 3–4. At the time of the signing of this agreement Old Republic was aware that the litigation was over, that the law firms who acted as defense counsel to the trustees were Whyte and Sidley, and that Foley had served as general counsel.

In May 1988 Sidley billed Old Republic approximately $998,812.67 for legal fees and expenses (collectively, "attorneys' fees") incurred in the defense of the trustees for the period from August 20, 1987 through and including March 25, 1988.[4] After asking Sidley to provide additional documentation for its fees and expenses, Old Republic notified the trustees on July 22, 1988 that it did not intend to pay the amount outstanding to Sidley. Old Republic immediately instituted the present action to obtain (1) a judicial determination of its obligation to Sidley for proper attorneys' fees under the agreement, and (2) a declaration that Sidley's bill for $998,812.67 was excessive, unreasonable and duplicative.

### DISCUSSION

Defendant Sidley moves to dismiss plaintiff's action for lack of proper standing because the requirements of the Declaratory Judgment Act have not been met and, further, for prudential and discretionary reasons. Because we hold that Old Republic does not face a "threatened injury" and therefore lacks standing, we do not reach the other proposed reasons for dismissal.

### I.  *Standing Requirements*

Article III of the Constitution limits the jurisdiction of the courts of the United States to resolution of "cases" and "controversies." This limit, along with other prudential considerations, is safeguarded by standing requirements. *Valley Forge College v. Americans United*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Because the case and controversy requirement is constitutionally specified, it represents the "core component" of the standing doctrine. *Allen v. Wright*, 468 U.S. 737, 750–51, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). "[A]t an irreducible minimum" this requires the party seeking to invoke the court's authority to

> (1) "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"; (2) "that the injury fairly can be traced to the challenged action"; and (3) that the injury "is likely to be redressed by a favorable decision."

*Vickers v. Henry County Savings & Loan Association*, 827 F.2d 228, 230–31 (7th Cir. 1987), *quoting Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. The dispute herein is whether Sidley's alleged "excessive, unreasonable and duplicative" fees and expenses (pl. mo. in opp. at 1) sufficiently threaten injury to Old Republic in violation of its legal rights.

Sidley's obligations as fiduciaries are owed directly to the trustees and disputes as to attorneys' fees are therefore ripe for resolution between the two. The insured can refuse to pay the bill of its attorneys and issues as to the billing could be litigated in a declaratory judgment action initiated by the insured client against the attorneys or, more likely, by a breach of contract suit initiated thereafter by the attorneys against the clients. In either posture,

---

**4.** Sidley's bill was for approximately $2,500,000. The $998,812.67 figure was derived by subtracting $1,500,000, representing a prior payment from Federal to Sidley, from the approximately $2,500,000.

the procedural requirements of standing would be met.

More commonly, the insurer fails to reimburse the insured because the former perceives the loss claim, including attorneys' fees, to be beyond that contemplated by the policy. Issues as to the billing would again be litigated either in a declaratory judgment action (here initiated by the insurer) or in a breach of contract suit (initiated by the insured). The attorneys would then be either a necessary party under Rule 19 of the Federal Rules of Civil Procedure, or permissively joined under Rule 20. In either instance, standing would be appropriate.

■ The procedural posture at hand, however, is very different. We look to the rationale of the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to determine whether standing is appropriate here. Declaratory judgments are available to potential defendants who wish to reduce the uncertainty created by the ability of potential plaintiffs to dictate when litigation commences. The purpose of the Declaratory Judgment Act is to "afford relief from uncertainty and insecurity with respect to legal relations." *See, e.g., Sears, Roebuck and Co. v. American Mutual Liability Insurance Co.*, 372 F.2d 435, 438 (7th Cir. 1967). Our inquiry therefore focuses on whether Old Republic faces this type of uncertainty. Put another way, could Sidley sue Old Republic directly were Old Republic to refuse payment because it perceived Sidley's fees and expenses to be "excessive, unreasonable and duplicative."

Old Republic claims that both the Old Republic policy and the agreement create a direct obligation to pay Sidley as a third party beneficiary of those contracts. And because the alleged overcharging by Sidley purportedly violates its legal rights, Old Republic submits that the two parties are "in controversy" and standing is proper.

## II. *Third Party Beneficiary Law*

■ In sum, we do not believe that Sidley is a third party beneficiary under either the Old Republic policy or the agreement. We quickly review the relevant law of the forum state, Illinois, before applying it to the facts as alleged.

To be considered a third party beneficiary the contract at issue must confer a direct—as opposed to incidental—benefit.

> The rule is settled in this state that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract.

*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc., et al.*, 78 Ill.2d 381, 384, 400 N.E.2d 918, 919, 36 Ill.Dec. 338, 339 (1980), *quoting Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498 (1931); *see also Holdbrook v. Pitt*, 643 F.2d 1261, 1270 (7th Cir.1981) (pursuant to federal common law, "[i]f the agreement was not intended to benefit the third party, however, he is viewed as an 'incidental' beneficiary, having no legally cognizable rights under the contract"). This direct benefit need not have been the sole purpose of the contract but it must be clear that the contracting parties intended the third party to benefit directly. *See Robson v. Robson*, 514 F.Supp. 99, 101 (N.D.Ill.1981), *aff'd* 681 F.2d 820 (7th Cir.1982). Old Republic contends that Sidley was a third party beneficiary of both the original policy and the agreement.

### A. *The Original Policy*

The trustees sought D & O insurance to protect themselves from the possibility that their actions might be questioned in court. Not only does the potential liability that might be assessed against them represent a risk but merely going to court, with all the attendant costs including attorneys' fees, is a threat sufficiently real that D & O policies include defense costs within the definition of "loss."

It is in this context that we conclude that Sidley was not a third party beneficiary to the Old Republic policy. At the time the policy was purchased, the prospect of litigation was uncertain and the law firm that

would profit therefrom was presumably unknown. "No court has ever held—indeed the proposition seems never before even to have been advanced—that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees." *Continental Casualty Company v. Marx,* 480 So.2d 177, 178–79 (Fla.App. 3d Dist.1985), *review dismissed,* 484 So.2d 9 (1986). We announce, as did the court in *Continental Casualty,* that "[w]e shall not be the first." 480 So.2d at 179.

But even if we thought that a lawyer should himself be permitted to sue upon an insurance policy, this court would be bound to maintain existing limits on the rights of third party beneficiaries. To the extent that Old Republic's position requires a substantive expansion of Illinois law, "this federal court sitting in diversity is particularly ill suited to such a task." *See, e.g., Gust K. Newberg Construction Co. v. E. H. Crump & Co.,* 818 F.2d 1363, 1368 (7th Cir.1987). We have little difficulty holding that Sidley was not an intended beneficiary of the Old Republic policy.

### B. *The Agreement* [5]

Old Republic contends that "Sidley's Motion to Dismiss is predicated upon the erroneous premise that since they were not a party to either the Federal or Old Republic Policies, they are not in controversy with Old Republic" (pl. mem. in opp. at 8). We are urged instead to find proper standing where "Old Republic's direct obligation to pay Sidley's legal fees and expenses (if reasonable and properly payable) is derived not only from the Old Republic Policy but, most importantly, from the Agreement to which Sidley was a specific, intended third party beneficiary." *Id.* We disagree that

Sidley can be so characterized under Illinois law.

It is wrong to say that the agreement's explicit requirement of the payment of attorneys' fees is alone sufficient to render Sidley a third party beneficiary. The requirement that the parties know of a third party's benefit is necessary but not sufficient. This is true even though the third party is identifiable at the time of execution. The crucial issue which separates "intended" from "incidental" beneficiaries is, by definition, intent—was the relevant provision inserted to benefit the law firms.

We think the answer is no. The payment of defense costs was addressed to benefit the trustees whose insurance (both primary and excess) covered attorneys' fees as a species of "loss." The agreement merely reiterated the policy coverage:

> Old Republic shall satisfy all remaining obligations of the Trustees in the Bradley Trust Litigation, including any unpaid portion of the determination, and any and all unpaid legal fees and litigation expenses related to the Bradley Trust Litigation and *properly payable under the terms, provisions and conditions of Federal policy numbers 7838–95–19 and (87) 7938–95–19 or Old Republic policy number CUG 20691.*

(Cplt., exh. 5 at 4 (emphasis added).) The above provision was included to give the trustees the benefit of their bargain—assurance that Federal and Old Republic would pay attorneys' fees as well as other "losses" under the D & O policy, in consideration of the insurance premium. That is why the agreement and the policies themselves "expressly refer to attorney fees." *See Metro East Sanitary District v. Village of Sauget,* 131 Ill.App.3d 653, 658, 475 N.E.2d 1327, 1330, 86 Ill.Dec. 760, 763 (5th Dist.1985).[6] We think this explanation,

---

**5.** We dismiss the notion that Sidley might be characterized as a party to the agreement. Old Republic and the trustees are the only parties thereto (cplt. ¶ 35). Sidley appeared at the settlement exclusively in its capacity as representative of the trustees.

**6.** Because the court in *Metro East* could conceive of no other reason to mention the attorneys' fees in a sewage treatment agreement, it held that the attorney was a third party benefi-

ciary and could therefore sue on the contract. "Such mention, having little to do with the project itself, goes far in rebutting any presumption that the parties intended to stipulate only for themselves." 131 Ill.App.3d at 658, 475 N.E.2d at 1330, 86 Ill.Dec. at 763. Here, however, attorneys' fees represent a component of "loss" against which the trustees went to great lengths to insure. *Contra Metro East,* attorneys' fees

"gleaned from a consideration of all the contract terms and the circumstances surrounding the parties at the time of the contract's execution" (here fully described in the complaint), best describes the intention of the parties. *See People ex rel. Resnik,* 78 Ill.2d at 384, 400 N.E.2d at 919, 36 Ill.Dec. at 339, *quoting Carson Pirie Scott,* 346 Ill. at 258, 178 N.E. 498.

Old Republic attempts to distinguish *Continental Casualty, see supra,* and *Hermann Hospital v. Liability Life Insurance Co.,* 696 S.W.2d 37 (Tex.App.1985), because "there was no separate agreement between the insurance company and the insured which identified the litigation and the carrier's obligation to pay the legal fees in that litigation" (pl. mem. in opp. at 15). This is the crux of the dispute: does Sidley become a third party beneficiary because (1) litigation is no longer a mere possibility but has already occurred; (2) the amount of legal fees is known; and (3) the exact law firm(s) to whom payment will eventually be made is also ascertainable. We think not because, as mentioned above, the agreement merely codified the preexisting obligation to pay attorneys' fees articulated in the original policies. Because the intent to benefit Sidley is lacking, Old Republic lacks proper standing.[7]

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.

were not at all irrelevant to these policies or the subsequent agreement.

**7.** Contact between Sidley and Old Republic, whether as a "demand" for payment or because payment will eventually be made directly to Sidley, cannot transform the parties' legal relationship. The issue remains whether Sidley was the intended beneficiary of either the policies or the agreement which incorporated their terms. And where the policies obligate payment of losses, including legal fees, *"on behalf of"* the insured, the logistics of payment are legally irrelevant (cplt. at exh. 1, ¶ 1.1).