[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10872
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 17, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60742-CV-JIC

YALE L. GALANTER, P.A.,
YALE L. GALANTER,
individually,

Plaintiffs-Appellants,

versus

CHARLES E. JOHNSON, JR.,
NATIONAL UNION FIRE INSURANCE CO., PITTSBURGH,
PENNSYLVANIA,

Defendants-Appellees,

NORTH AMERICAN SPECIALTY INSURANCE, CO., INC., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 17, 2008)**

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Yale L. Galanter and his law firm (collectively, "Galanter") appeals from the entry of final judgment in Galanter's action for breach of contract, bad faith and unjust enrichment, seeking legal fees in the amount of $769,321.65 plus interest, against his client, Charles E. Johnson, Jr. and four insurance companies that provided Directors and Officers ("D&O") insurance policies to Johnson's employer, Purchasepro.com, Inc. On appeal, Gallanter only challenges the district court's entry of summary judgment in favor of National Union Fire Insurance Co., arguing that the district court erred in construing the contract between the parties to condition payment upon Johnson's consent and upon a separate, future agreement upon which Galanter was not a party. After thorough review, we affirm.

We conduct a de novo review of a district court's order granting summary judgment, "applying the same legal standards as the district court." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "Summary judgment is appropriate if the evidence before the court shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citations omitted).

The relevant facts are these. Johnson was insured through Purchasepro.com under a "tower" of D&O insurance coverage, of which National Union issued the primary policy and the final excess policy, with three layers of intermediate coverage issued by different carriers. Specifically, (1) National Union's primary policy had limits of $10 million; (2) TIG Insurance's excess policy had limits of $5 million in excess of the primary National Union policy; (3) Underwriters at Lloyd's, London's excess policy had limits of $5 million in excess of the TIG policy; (4) North American Specialty Insurance Company's excess policy had limits of $5 million in excess of the Lloyd's policy; and (5) National Union's excess policy had limits of $10 million in excess of the North American policy. Galanter concedes that National Union's primary policy was exhausted in August 2005, and the next $15 million limit of excess coverage by other companies was exhausted by October 2006, when National Union's excess policy was triggered.

Galanter provided legal services to Johnson in a federal criminal proceeding from late 2004 through January of 2006, pursuant to a letter agreement dated December 22, 2004 from National Union's counsel to Galanter. This agreement gave National Union's consent for Johnson to retain Galanter under National Union's D&O policy (even though Galanter was not a pre-approved Panel Attorney under the policy), subjected the agreement to certain policy exclusions

3

and limitations, including the policy limits, and detailed the procedures that Galanter must follow in order to be paid. Notably, it provided that Galanter was to send invoices to National Union on a monthly basis, and National Union had 90 days from the receipt of such invoices to reimburse the same. The agreement was then signed by Johnson, Galanter, and counsel for National Union. Galanter was ultimately paid over $2 million pursuant to the agreement.

In January of 2006, a dispute arose between Galanter, Johnson, and the tower insurance companies, resulting in the companies' refusal to pay Galanter's final bill. Galanter withdrew from the representation of Johnson in January, 2006, and submitted a final bill of $769,321.65 for services for the period from November 2005 through January 2006, during which time Galanter worked hundreds of hours in the criminal trial of Johnson's co-defendants.[1] Following the dispute, Galanter brought this lawsuit against Johnson and the tower insurers, even though, in April 2007, Johnson re-retained Galanter to represent him.

As an initial matter, we agree with the district court that the letter agreement, drafted by counsel for National Union, is an independent contract between National Union and Galanter, which created a reasonable expectation on the part of

---

[1] Around this same time, Johnson, along with his other co-defendants, negotiated and then agreed to a Defense Funding Agreement, essentially capping total fees received from National Union, in return for an agreement by National Union not to seek reimbursement of fees should a covered defendant be found guilty or plead guilty.

Galanter that he would be paid pursuant to the policy for representing Johnson. "It is elementary that for an enforceable contract to exist there must be an offer, an acceptance, consideration and sufficient specification of terms so that the obligations involved can be ascertained." W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d 297, 302 (Fla. Dist. Ct. App. 1999) (quotations omitted).[2]  As the district court reasoned, in consideration for their signed acceptance of the offer with certain imposed conditions, Galanter was allowed to be paid under the policy, and Johnson was able to have Galanter represent him.

We also agree with Galanter that there was nothing in the agreement, or the policy, conditioning Galanter's payment upon Johnson's consent to such payment, and that Galanter -- not party to the subsequent Defense Funding Agreement -- was not subject to any changes it may have imposed on the original policy and letter agreement.  However, our inquiry does not end here.

As we've noted, Galanter is subject to the various policy exclusions and limitations expressly stated in the letter agreement. One of those express limitations is that all claims for payment of defense costs are subject to the continuously depleting policy limits. There is no dispute that the initial $10 million

---

[2]     We are assuming, as the district court did, that Florida law applies.  The parties have not raised this issue on appeal, and we therefore do not address it here.

5

dollar primary policy limit specifically described in the agreement was depleted in August of 2005, <u>prior to</u> the billing of the unpaid amount sued upon in this action. Moreover, to the extent that the district court gave Galanter the "benefit of the doubt" that the letter agreement's policy limit language included the excess amount in the final $10 million National Union policy, we do not agree. Even if the policies were "follow-form" and intended to be interpreted as one, Galanter was not entitled to benefits directly from the policy. <u>See</u> <u>Continental Casualty Co. v. Marx</u>, 480 So. 2d 177, 178-79 (Fla. Dist. Ct. App. 1985) ("No court has ever held . . . that [a] lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees.").[3] Rather, Galanter was only entitled to payment pursuant to the letter agreement, which does not make reference to the excess policy or its limits. <u>See</u> <u>Key v. Allstate Ins. Co.</u>, 90 F.3d 1546, 1549 (11th Cir. 1996) (holding that under Florida law, if the terms of a contract are clear and unambiguous, "a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract."). In short, National Union cannot be held liable for breach of contract

---

[3]     See also <u>Old Republic Ins. Co. v. Sidley & Austin</u>, 702 F. Supp. 207, 211 (N.D. Ill. 1988); <u>Simmons v. USF&G Co.</u>, 405 A.2d 675 (Conn. Sup. Ct. App. Session 1978); <u>Kelly, Walker & Liles v. McFarling</u>, 509 S.W.2d 659 (Tex. Ct. App. 1974).

6

under the letter agreement since its primary policy limits -- to which, as the letter agreement provided, Galanter was subject -- were exhausted.[4]

Accordingly, we affirm the district court's entry of summary judgment in favor of National Union. See Bircoll v. Miami-Dade County, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007) ("This Court may affirm on any ground supported by the record.").

**AFFIRMED.**

---

[4] Galanter's primary response to this holding is that National Union did not make this argument with particularity before the district court, and thus that the district court erred in ruling on this basis. However, Galanter was generally on notice of, and in fact espoused, the plain language in the letter agreement. See Artistic Entm't, Inc. v. City of Warner Robins, 331 F.3d 1196, 1201-02 (11th Cir.2003) (per curiam) ("[W]here a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided."); Scott v. NCNB Nat. Bank of Florida, 489 So.2d 221 (Fla. Dist. Ct. App. 1986) (no error where nonmoving party had sufficient notice of basic argument).

On the merits, Galanter essentially says the fact that the primary policy limit was exhausted should not control, arguing that the insurers' subsequent course of conduct modified the terms of the written letter agreement, since he received payments from the insurers even after National Union's primary policy was exhausted. But National Union cannot be liable under a course-of-conduct theory because: (1) Galanter has not pointed to any evidence on the record to dispute National Union's showing that any payments Galanter received immediately after August 2005, when National Union's primary policy was exhausted, were paid by the other insurers in the tower, not National Union (and thus, National Union cannot be said to have given the consent required for such a modification, see Rhodes v. BLP Associates, Inc., 944 So.2d 527 (Fla. Dist. Ct. App. 2006)); and (2) Galanter has not pointed to any evidence in the record to show that the payments he received in 2007, after he was re-retained, were pursuant to the original letter agreement. Rather, the undisputed record indicates that when he was re-retained, he received payments pursuant to a subsequent agreement.

7